Henry T. Dunn, Respondent, v. Mike Altman, Appellant.

| 50 | 231 |
|----|-----|
| 83 | 489 |
| 50 | 231 |
| 98 | ³571 |

St. Louis Court of Appeals, May 17, 1892.

1. **Right of Parent to Value of Infant's Services:** BURDEN OF PROOF. Where one has knowingly employed a minor against the express wishes of the minor's father, and, in an action against him by such father for the value of the minor's services, seeks to reduce the amount of recovery on the ground that he supplied the minor with necessaries, the burden is on him to show the extent of the neces-

saries thus supplied by him; and evidence that he paid wages to the minor, allowing the minor to apply the same as he wished, will not suffice, though it appears that the same were partially used by the minor in the purchase of necessaries.

2. **Witnesses:** CROSS-EXAMINATION. The general rule is, that the limit of cross-examination on collateral matters is within the sound discretion of the trial court, and that a judgment will not be reversed for curtailing such cross-examination, unless it clearly appears that this discretion has been abused to the prejudice of the party complaining; and *held* that this did not appear in the present case.

3. **Evidence, Hearsay.** Declarations of third persons, not made in the presence of nor authorized by the party sought to be affected by them, and not constituting a part of the *res gestæ*, are *held* to be hearsay and incompetent evidence.

4. **Practice, Trial:** MOTION FOR NEW TRIAL. *Semble*, that the allegation in a motion for new trial, that "the court erred in declaring on part of plaintiff," does not preserve an exception for error in the giving of an instruction for the plaintiff.

*Appeal from the New Madrid Circuit Court.*—HON. H. C. O'BRYAN, Judge.

AFFIRMED.

*R. B. Oliver* and *Lubke & Muench*, for appellant.

*W. W. Corbett*, for respondent.

THOMPSON, J.—This action was brought before a justice of the peace upon a statement which alleged, without giving any dates or specifications of time, that defendant owed plaintiff, August 23, 1890, $227.50 or $1.25 per day, for services or work rendered defendant by plaintiff's son, Hugh S. Dunn, who was at the time about seventeen years old; that plaintiff could have made the son's work worth the sum named, but for the fact that defendant employed the son as teamster for defendant against the protest of plaintiff, and, therefore, plaintiff prays judgment for the amount stated.

The defendant filed the following set-off:

*H. T. Dunn to Mike Altman, 1890.*

| | |
|---|---|
| For amount paid him cash.............................................. | $ 7 00 |
| For amount paid Dr. Watson ...................................... | 5 00 |
| For amount paid for two pair of shoes........................... | 4 00 |
| For amount paid for John Hull ..................................... | 2 00 |
| For amount paid for cap and valise ............................... | 1 50 |
| For amount paid for medicine ...................................... | 50 |
| | $20 00 |

The trial in the circuit court was before a jury. It resulted in a verdict and judgment in favor of the plaintiff in the sum of $50. The defendant prosecutes this appeal.

At the trial in the circuit court the plaintiff gave evidence tending to show that his son Hugh, aged seventeen, had been working for the defendant, doing logging and rafting, with the plaintiff's consent, prior to January 12, 1890, at which date the plaintiff notified the defendant not to employ the boy any longer, as the plaintiff needed him at home,—at the same time informing the defendant that, if he did employ the boy any longer, the plaintiff would hold the defendant liable for the wages and sue him for damages. Plaintiff also gave evidence tending to show that, in April, 1890, the plaintiff again notified the defendant not to employ the boy, but that, notwithstanding these warnings, the defendant did employ the boy at intervals between January 12, and August 23, 1890. The testimony of the plaintiff himself would not enable the jury to arrive at any definite conclusion as to the amount due for the services of the boy. But the plaintiff called the boy as his witness, and the boy testified that he worked for the defendant about all the month of January, 1890; that is, during all the time in that month that the weather permitted work. He also worked for him in the months of February, March, April, May, and down to the twenty-fifth of June. He then resumed

work for the defendant about the fifteenth of August, and continued to work for him until the twenty-third of August, 1890. For his services from January 12, to August 23, 1890, the defendant paid him in the aggregate something over $100. Outside of this statement, the boy was unable to fix definitely the amount of work which he did for the defendant during this period,—that is to say, he could not definitely state the number of days' work which he put in during these months. The defendant paid him, according to his evidence, at the rate of $1.25 per day, but, according to the defendant's evidence, at the rate of $1 per day.

We now come to an important point which was controverted upon the evidence. This related to a settlement claimed to have taken place between the plaintiff and the defendant for the services of the boy down to the date of the settlement, which is variously fixed by the witnesses from April to June, 1890; the plaintiff's testimony fixes it in April, and the defendant's as late as June. The defendant's testimony was distinctly to the effect that this settlement was a settlement of all matters of difference between the plaintiff and himself down to that date, including what was due the plaintiff for the services of the boy. Both parties admit that the defendant paid to the plaintiff in that settlement the round sum of $10. But the plaintiff in his testimony takes the position that the settlement included only what was due him from the defendant for keeping cattle for the defendant during the previous spring. The boy was present and participated in the settlement; that is shown by the testimony of all the witnesses, the plaintiff, the defendant and the boy. The boy, who was called as a witness for the plaintiff, testified in support of the testimony of the defendant, that the settlement included a settlement for his services down to that date, as well as what was

due from the defendant to the plaintiff for keeping the defendant's cattle. The plaintiff in his testimony admits that, during the settlement, the boy and the defendant figured up together what was due the boy from defendant by themselves, but claims that he had nothing to do with that,—knew nothing about that, and that the settlement between him and the defendant did not include that. His testimony as to that settlement was delivered in the following language: "Mike Altman [the defendant] sent Hugh Dunn [the son] over and got the time book, and that they set over to one side and had their settlement. I never heard a word about it. I do not know what it amounted to any more than you do. Then Mike Altman came and said, 'What do I owe you for feeding and taking care of my cattle and getting them up out of the common?' I told him I did not have the stock book. I says, 'Give me $10, and I will square off even.' Afterwards I squared off by the book, and he still owed me $2.65.

"*Q.* When he paid the $10 was that for your son's work or any part of it? *A.* Not to my knowledge.

"*Q.* It was understood that it was for the getting up and the feeding of those cattle? *A.* Yes, sir."

I. This statement of the testimony brings us to the first assignment of error, which is that the verdict was based upon mere conjecture or surmise. This is predicated upon the view, that there was no evidence tending to show the definite number of days work performed by the boy for the defendant, for which the defendant had not rendered compensation either to the father or to the boy with the father's consent, or in necessaries furnished the boy. Taking the testimony of the father as the basis upon which to decide this question, which was to the effect that, during the period named, from January 12, to August 23, 1890,

the boy worked for the defendant without the plaintiff's consent; taking also the testimony of the son as to the amount paid him directly for his services, an amount in excess of $100, allowing the defendant the full amount of his set-off, and we still have a sum which is $30 in excess of the verdict of the jury. It is true that there is some evidence that some of the money which was paid by the defendant to the boy was used by the boy in buying clothing for himself. The boy testified on his cross-examination that he used some of the money which was paid him by the defendant in buying some clothing, "and the rest I spent as I pleased, like the rest of the gang." It seems to be conceded by the plaintiff in argument that even upon his own theory the defendant is entitled, to the extent to which he may have supplied the boy with necessaries, to an abatement of the amount due by the defendant to the plaintiff. *Huntoon v. Hazleton*, 20 N. H. 388, 392. But assuming as true, which we must do for the purpose of disposing of this assignment of error, the evidence given by the plaintiff, that the defendant had knowingly employed the son of the plaintiff, contrary to the express wishes of the plaintiff, the plaintiff becomes presumptively entitled to recover his wages from the defendant; that is to say, at his election either what the defendant agreed to pay the boy, or the reasonable value of his earnings; and if the defendant is entitled to any abatement of the amount of this recovery on the ground of having supplied the son with necessaries, it is for him to show the extent of such abatement—the amount of necessaries, if any, so supplied by him. But it does not appear that he supplied him with any necessaries; he simply paid him his wages, and allowed him to do with the money as he pleased, just as though he had been emancipated by his father. We must, therefore, take it that he has not exhibited any evidence entitling

him to an abatement, under the head of necessaries, of the amount which the plaintiff upon his evidence, if believed by the jury, was entitled to recover; and we must, therefore, conclude that the verdict is within the limits of the evidence, and overrule this assignment of error.

II. It is also assigned for error that the court excluded, on the cross-examination of the plaintiff, evidence of what the boy was earning, with the plaintiff's consent, just before the year 1890. It is argued that this evidence, if admitted, would have given the jury a criterion by which to determine what the boy was capable of earning during the period of time embraced in this action, and what his services were really worth. We do not gather the force of this assignment of error, because we do not see that there was any particular controversy between the parties at the trial as to what the services of the boy were really worth. The plaintiff, in his statement, claims for such services at the rate of $1.25 per day. The boy testifies that he was paid by the defendant at that rate per day. The defendant testifies that he paid the boy at the rate of $1 per day. Other evidence is to the effect that the value of the services of the boy was, without board, $1.75 per day, but the value of board per day does not appear. The verdict of the jury is within the evidence, even under the defendant's theory, that he was paying the boy at the rate of only $1 per day.

III. The next assignment of error is that the court erred in refusing to allow the plaintiff to state, on cross-examination, what he said to his son after a previous trial of this case. The page of the record is not referred to, to which this assignment relates; but we find, on page 16, the following colloquium, which we conclude is the evidence referred to:

" *Q.* Do you remember having a conversation with your son on the night of the trial of this case in Kline's hotel? (Objected to by counsel for plaintiff, because incompetent and irrelevant. Objection sustained; to which ruling of the court the defendant objected and excepted at the time.)

" *Q.* Did you not, on the night that this trial was submitted before, in Kline's hotel, in New Madrid, have a conversation with your son, in which you reprimanded him for swearing as he had sworn, and you said to him that his testimony had beat you out of the suit, or words to that effect? (Objected to by counsel for the plaintiff, because incompetent. Objection sustained. 'What Hugh Dunn may have sworn to is incompetent as far as this witness is concerned.' The ruling of the court objected to and excepted to by the defendant at the time.)"

In support of this assignment of error counsel for the defendant appeal to the well-known rule relating to what is called the indirect impeachment of a witness, which is, that the witness may be interrogated, on cross-examination, as to whether he had not, on a previous occasion out of court, made statements contrary to the statements made by him on the witness stand. *Brown v. Weldon*, 27 Mo. App. 251. The rule has no application to this assignment of error, because it does not appear, from the language above quoted, that the object of the question was to elicit from the witness the fact, that he had made different statements out of court from those made by him on the witness stand. It is, of course, admissible to show that a party has attempted to intimidate a witness, not only on grounds of public policy, but also as affecting the integrity of his case. But we do not see that the question excluded had a tendency to elicit such an attempt on the part of the plaintiff, or to draw anything more than a natural

expression of the plaintiff's disappointment at his son's testimony. A verdict had just gone against him, and it does not appear that a new trial had been granted or even moved for; and there is nothing in the record from which we can conclude that the remarks sought to be elicited were made with reference to a future trial, or that they had any effect in influencing a future trial, or that they had any effect in influencing the testimony of the boy on the present trial. On the contrary, though called as a witness for the plaintiff, his testimony was quite strong for the defendant. The general rule is, that the limit of cross-examination on collateral matters is within the sound discretion of the trial court, and that a judgment will not be reversed for curtailing such cross-examination, unless it clearly appears that this discretion has been abused to the prejudice of the party complaining, which does not appear in this case.

IV. The next assignment of error is that the court erred in excluding, on the cross-examination of the boy, evidence of what he said to the defendant about having his father's permission when he returned from his father's house to work for the defendant in June. We need not argue the proposition, that it would have been error to admit this evidence over the objection of the defendant. The defendant had, at the request of the father, discharged the boy and sent him home. Shortly afterwards the boy returned to the defendant, and then it was sought to elicit the statements which the boy made to the defendant upon the occasion of his return. Such statements would have been no part of any *res gestæ;* would have been clearly hearsay; would not have been binding upon the father, as he was not present when they were made, and as it was not offered to show that he authorized them in any way. *Mason v. Hutchins,* 32 Vt. 780. The admission of them would have been contrary to all principle, and we are sur-

prised that such an assignment of error is made on this appeal.

V. The next assignment of error challenges the propriety of the instruction upon which the court submitted the case to the jury. We are not satisfied that this assignment was properly brought to the attention of the trial court in the motion for new trial. The only clause in that motion which we can imagine as intended to refer to the instruction reads thus: "The court erred in declaring on part of plaintiff." The word "declaring" is so illegibly written, that it might equally read "declaiming;" and we are not sure that "declaiming" is not the word intended, since there was an altercation between the court and counsel for the defendant during the trial and in the presence of the jury. But, assuming the word to be "declaring," this is not apt language in which to assign in a motion for new trial the giving of an erroneous instruction to the jury. But, with the view of giving the defendant the benefit of any doubt on the question, we have examined with care the instruction in connection with the evidence, and we have come to the conclusion that it is not a misdirection.

We perceive no error in the record, and the judgment will, therefore, be affirmed. It is so ordered. All the judges concur.