420 P.2d 127

**Nina NAHAS, Plaintiff-Appellant,**

**v.**

**Mary Louise NOBLE, Defendant-Appellee.**

**No. 7840**

Supreme Court of New Mexico.

Oct. 3, 1966.

Rehearing Denied Nov. 22, 1966.

McRae Ussery, Mims, Ortega & Kitts, William E. Snead, Albuquerque, for appellant.

Rodey, Dickason, Sloan, Akin & Robb; Charles B. Larrabee, Albuquerque, for appellee.

## OPINION

CARMODY, Chief Justice.

This is an appeal from a directed vedict in favor of defendant at the close of plaintiff's case.

The question to be decided is: If an unemancipated minor child negligently injures a parent, may the parent sue the child for those injuries after the child becomes emancipated? Our answer is "No."

Plaintiff was a passenger in an automobile owned by her and her husband, driven by the defendant at plaintiff's request. There was a collision with another vehicle. At the time of this accident, defendant was nineteen years old, living at home with her parents. Plaintiff is her mother. No claim is made that defendant was other than an unemancipated minor at the time of the accident.

Fifteen months after the accident, defendant married. Since her marriage, she has not been a member of her mother's household. Sixteen months after defendant's marriage, plaintiff sued defendant, claiming defendant's negligence caused the automobile accident and her resulting injuries. No claim is made that defendant was other than an emancipated minor at the time suit was filed.

The author of the annotation at 60 A.L.R. 2d 1285 states:

"Although there is some authority to the contrary, the overwhelming majority of the cases sustain the view that a parent or his representative cannot maintain an action in tort against an unemancipated minor child, at least in the absence of a statute conferring such right, the reasons advanced for the rule being the necessity for the encouragement of family unity and the maintenance of family discipline, which are also the reasons advanced for the majority rule forbidding a minor child to maintain a tort action against its parent. * * *"

Suits by a parent against a child tend to disrupt the family relationship because of the antagonism implicit in such suits. Schneider v. Schneider, 1930, 160 Md. 18, 152 A. 498, 72 A.L.R. 449. There is an inconsistency between the parent's position as a natural guardian of the child and the parent's position as plaintiff demanding damages from the child. Shaker v. Shaker, 1942, 129 Conn. 518, 29 A.2d 765. "* * * [I]t is repugnant to the prevailing sense of propriety that a mother should bring an action at law against her own minor child, * * *." Oliveria v. Oliveria, 1940, 305 Mass. 297, 25 N.E.2d 766.

Encouragement of family unity and the maintenance of family discipline being sound public policy, we hold that a parent

cannot maintain an action in negligence against an unemancipated minor child.

Plaintiff, however, asserts that the rule forbidding parent-child suits is no longer applicable when the child becomes emancipated. She relies on Logan v. Reaves, 1962, 209 Tenn. 631, 354 S.W.2d 789. In Logan, the child was a minor at the time of the accident but was emancipated by marriage prior to the time the suit was filed. The Tennessee court held that when the public policy of protecting the family relationship ceases, then the rule disallowing a parent's suit against the child no longer applied. Emancipation having terminated the family relationship, the rule did not apply and the action against the emancipated child could be maintained. Although the Logan case was a wrongful death action, the ruling of the Tennessee court is based on the emancipation of the minor at the time suit was filed.

Plaintiff also relies on Palcsey v. Tepper, 1962, 71 N.J.Super. 294, 176 A.2d 818. This was also a wrongful death case. Suit by the minor child against the estate of the deceased parent was allowed. The family relationship was destroyed by the death of the parent. It is thus distinguishable on its facts. Plaintiff cites Trevarton v. Trevarton, 1963, 151 Colo. 418, 378 P.2d 640, and Dunlap v. Dunlap, 1930, 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055. In these cases there was a business or employment relationship between the parent and child, and

thus they are not applicable to the factual situation in this case.

■ With certain exceptions, the Wisconsin court in Goller v. White, 1963, 20 Wis.2d 402, 122 N.W.2d 193, held that an unemancipated minor could sue the parent on the basis of negligent injury. In so doing, the court stated that liability insurance could be considered in making the policy decision of whether to abrogate parental immunity in negligence actions. Compare also Ertl v. Ertl, 1966, 30 Wis. 2d 372, 141 N.W.2d 208; Balts v. Balts (Minn.1966), 142 N.W.2d 66; and Gaudreau v. Gaudreau (N.H.1965), 215 A.2d 695. Other courts have held that liability insurance is not to be considered. Tucker v. Tucker (Okl.1964), 395 P.2d 67; Rambo v. Rambo, 1938, 195 Ark. 832, 114 S.W.2d 468. See 60 A.L.R.2d 1288. Where defendant is immune to suit, the existence of insurance does not constitute a waiver of that immunity, absent specific legislative authorization. Clark v. Ruidoso-Hondo Valley Hospital, 1963, 72 N.M. 9, 380 P.2d 168. The question is whether the parent's suit may be maintained against the child. So far as plaintiff is concerned, liability insurance pertains to collection of any judgment that might be obtained, and accordingly its presence or absence is not relevant in determining whether the action lies in the first instance.

In Brown v. Parker (Mo.App.1964), 375 S.W.2d 594, the minor was unemancipated

at the time of the accident and at the time suit was filed, but had reached majority before the answer was filed. The Missouri court stated that an unemancipated minor child could not sue his parent for an unintentional tort and held that the same rule would apply to prevent a parent suing an unemancipated minor child. In each situation the basis for the rule is a "public policy which refuses to allow the family relationship to be disturbed by such actions."

· It was argued in Brown v. Parker, supra, that the parent's disability to sue disappeared upon the defendant's reaching the age of twenty-one prior to trial. It was further argued that the rule prohibiting the parent's action against the child should not apply since the basis for the rule, maintenance of the family relationship, had vanished. This is the argument that was accepted in Logan v. Reaves, supra, but not in Missouri when that court stated:

> "However logical such an argument may be, the same considerations of public policy prevent our adopting it. In the first place the effect of such a ruling would be to allow a parent to sue an unemancipated minor child providing he could keep the case alive until after the child reaches legal age. Such a state of events would clearly violate the sound considerations upon which the rule is based. The family relationship would be disturbed during the time the parent waited for the child to become of age. * * * "

The same policy considerations apply to prevent suits by an emancipated minor against a parent for negligent injury inflicted by the parent at a time when the child was unemancipated. Tucker v. Tucker, supra; Reingold v. Reingold, 1935, 115 N.J.L. 532, 181 A. 153; Shea v. Pettee, 1954, 19 Conn.Supp. 125, 110 A.2d 492.

Plaintiff, in opposing application of the rule prohibiting her suit against her daughter, argues that any family disharmony created by the injury has already occurred. This argument fails to consider the effect of prospective litigation on the family relationship. What public policy forbids is litigation between parent and child based on negligent acts of the defendant occurring at the time the child was a member of the family unit and subject to parental care and discipline. Brown v. Parker, supra.

Questions of public policy are ordinarily determined by the legislature. We think this long-established and generally accepted rule of public policy is a matter for proper consideration by the legislature but that it should not be overturned by the court.

The trial court did not err in directing the verdict. The judgment is affirmed.

It is so ordered.

CHAVEZ, NOBLE, and COMPTON, JJ. concur.

MOISE, J., dissenting.

MOISE, Justice (dissenting).

After considerable research and thought I have concluded that the opinion of the court does not accord with what would seem to me to be the proper disposition of this case.

My disagreement is not founded on the tenuous distinction suggested by appellant to the effect that emancipation prior to suit should negate the child's immunity to suit by the parent but is based on my belief that logic and reason do not support such an immunity, whether the child is emancipated or unemancipated.

Also, since we have no precedent in New Mexico, we have no problem of stare decisis such as was present in the governmental immunity cases (see State ex rel. State Highway Commission v. Town of Grants, 69 N.M. 145, 364 P.2d 853, and Clark v. Ruidoso-Hondo Valley Hospital, 72 N.M. 9, 380 P.2d 168). We should not blindly adhere to precedents from other jurisdictions, but should follow reason and logic in arriving at our own conclusion. If we do so we will be spared having to consider reversing our position at a later date when legal rights have accrued in reliance on our decision. In such circumstance, not making a change in established law without legislative direction is justified. However, we are not now so situated.

It is evident that there are two conflicting positions with regard to parent-child immunity. The great weight of the case law supports the application of the barrier to suit as held in the court's opinion, asserting as rationale therefor (1) the analogy between the barrier to suit between husband and wife; (2) the possibility of ultimate inheritance of the amount recovered in damages and depletion of other children's inheritance; (3) the possibility of fraud; (4) disturbance of domestic tranquility; (5) the position of the family as a quasi-governing unit; and (6) interference with parental discipline and control. McCurdy, Torts Between Parent and Child, 5 Villanova L.Rev. 521, 526. The contrary position that there is no sound foundation for the parent-child immunity rule except in cases where the alleged negligent act involves exercise of parental authority or exercise of parental discretion with respect to provision of necessities is supported by the great majority of the writers but until recently was virtually unsupported by any United States case law. Prosser on Torts, 3rd Ed., p. 885; 1 Harper and James, Law of Torts, § 8.11, p. 647; McCurdy, Torts Between Parent and Child, supra; Comment, 23 Ohio St.L.Jrnl. 339; Note, 10 Wayne L.Rev. 602; Note 28 Tenn.L.Rev. 419; Comment, 48 Iowa L.Rev. 748; Note, 12 Cleveland Marshall L.Rev. 339.

Of late, at least three jurisdictions have come over to the view expressed by the

various writers on the subject. Wisconsin in Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193, and the later case of Ertl v. Ertl (April 12, 1966) 30 Wis.2d 372, 141 N.W.2d 208; Minnesota in Balts v. Balts (April 1, 1966) 142 N.W.2d 66; and New Hampshire, in Gaudreau v. Gaudreau (December 30, 1965) 215 A.2d 695, following the policy set forth in Dean v. Smith (June 30, 1965) 106 N.H. 314, 211 A.2d 410, have all taken the position that there is no privilege or immunity to a suit in tort between parent and child. This is in keeping with the similar positions by various commonwealth nations. See Young v. Rankin (1934) Sess.Cas. 499 (Scottish, the digest of which is found at 28 English and Empire Digest 525, #203) and Deziel v. Deziel (1953) 1 Dominion Law Report 651 (Ontario High Court).

As already noted, we have no previous precedent in our law with regard to the question. Accordingly, either position could be taken. Without setting forth the rationale supporting the immunity, I am impressed that the treatment of the problem in Balts v. Balts, supra, amply explains and accords with my own feeling. In addition to what is there said, I would add that the rule, as it stands, is already riddled with exceptions, many of which, with citations, are set out in 23 Ohio St.Law Jrnl. 339, 342–346. These exceptions include father and son in master-servant relationship, child riding in father's school bus, infant riding with parent who is a common carrier, parent as a member of a partnership, parent's wilful misconduct (see also, Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218), peace of the home already disturbed beyond repair, recovery from father's employer though the father (employer's servant) was immune, recovery after emancipation, recovery after majority, recovery against one who stands in place of a parent, recovery by brother against sister, child's administrator recovering from parent, and (not mentioned in the note) the reverse—child recovering from representative of the deceased parent, Brennecke v. Kilpatrick, 336 S.W.2d 68 (Mo.1960), and parent's dealings with infant's property (wills, partnerships, real estate, etc.). These varied exceptions would seem to indicate an attempt by courts to avoid the consequences of the rule by eroding it gradually rather than by meeting it squarely and rejecting it.

As to the comment of the majority concerning Goller v. White, supra, I do not understand that the Wisconsin court held that the fact that the individual had liability insurance was the reason for the decision. What they did hold was that the fact that today the general public could be assumed to have liability insurance (see §§ 64–24–42 to 64–24–104, N.M.S.A.1953) was a basis for overriding the policy upholding the application of the immunity doctrine since tranquility of the home was no longer threatened in the majority of the cases.

 

This would seem to be a valid consideration of the overall effects of insurance in reaching a general public policy. Whether insurance is or is not present in any given case should not be considered in determining if liability is present.

The case should be reversed and remanded for trial. I respectfully dissent from the contrary conclusion reached by the majority.