203 So.2d 7 (1967)
Dwight C. RICKARD, an Infant by and through His Next Friend, His Father Cecil Ray Rickard, Appellant,
v.
Cecil Ray RICKARD and Elnora Rickard, Husband and Wife, Appellees.
No. 67-139.
District Court of Appeal of Florida. Second District.
October 18, 1967.
Halley B. Lewis, Ft. Myers, for appellant.
James A. Franklin, Jr., of Henderson, Franklin, Starnes & Holt, Ft. Myers, for appellees.
PIERCE, Judge.
This is an appeal by Dwight C. Rickard, an infant, by and through his next friend and father, Cecil Ray Rickard, plaintiff below, from a final order dismissing with prejudice the amended complaint filed against his parents.
We have the anomaly in this case of a minor child, by and through his next friend and father, suing his parents. There was an original complaint filed, to which the parents filed a motion to dismiss, which was granted. Amended complaint was thereupon filed, which the parents likewise moved to dismiss, resulting in an order of dismissal with prejudice.
The amended complaint alleged that on August 1, 1963, plaintiff infant Dwight was 7 years old and living with his parents in Pompano Beach, Florida; that on said date Dwight was playing with two other small boys and while "squirting charcoal lighter fluid" one of the playmates struck a match and Dwight's clothing "became engulfed in flames" from which Dwight suffered severe burns over a considerable portion of his body; that the accident "resulted from the negligent and careless manner" in which the parents "provided an unsafe place" for Dwight to play; and that the parents' said "negligence" was the sole and proximate cause of the injury. Damages of $25,000.00 for the injuries aforesaid and the medical expenses incident thereto was claimed.
Motion to dismiss the amended complaint was filed by the parents, alleging failure to state a cause of action, that the Court lacked jurisdiction over the subject matter and over the defendants, and that there was improper venue. The motion also urged that "a party cannot sue himself", that such a suit "is contrary to the public policy"; that the same parties cannot "take both sides of the cause thereby eliminating any issue *8 in the case", and that it affirmatively appeared on the face of the pleadings that the events took place "in some county other than Hendry County."
Attached to the original complaint is what appears to be a copy of a Homeowners Insurance policy covering physical loss of the dwelling and personalty of the parents and also insuring the parents against personal legal liability because of bodily injury to another. Nowhere does it appear that said "policy" was attached to the complaint as an exhibit nor is there any mention whatever thereof in the complaint. The Court in granting the motion to dismiss the complaint, ordered that said document be stricken from the Court files.
Upon appeal to this Court it is contended that the trial Judge erred in dismissing the amended complaint and also in striking the document from the original complaint. We disagree and affirm.
It will be observed that the suit is predicated upon the theory that an infant child may sue his parents for bodily injury suffered by the child if the parents were allegedly negligent in providing a safe place for the child to play. Such type of suit is not maintainable. The rule is laid down in American Jurisprudence, Vol. 39, Parent and Child, § 90, page 735, as follows:
"Although there is nothing in the English decisions to suggest that under the early common law a child could not sue its parent for a personal tort, it has become established by the weight of authority in this country that no such action can be maintained by the child. Especially is this true where the tort was committed in the course of the family relationship. This rule, like that forbidding at common law the bringing of an action by a wife against her husband for a personal tort, is not the product of any inherent disability of the child to sue its parent, but rather is based upon the interest that society has in preserving harmony in the domestic relations. It is said that the rule is not an absolute one, but exists only where the suit would disturb the family relations. The law, on grounds of public policy, prefers to correct or punish the parent's misconduct by taking the child from his custody or subjecting him to a criminal prosecution, rather than, by permitting the institution of a civil action against him, to encourage family disunity, impair parental discipline, and make it possible for a child, after attaining majority or after the parent's death, to resurrect, as the basis of an action at law, past real or fancied wrongs * * *."
There is no reported case in Florida on the precise point, but one case in close analogy to the case sub judice has been decided by this Court, Meehan v. Meehan, Fla.App. 1961, 133 So.2d 776. In that case the father of James Meehan, deceased, a minor, sued another minor son, C. Edward Meehan, III, for fatal injuries allegedly inflicted negligently by Edward upon James. This Court stated the point involved upon appeal to be "[w]hether or not a rule of law exists which bars an action by a parent against a minor unemancipated child for a negligent tort." In ruling that such type of suit is barred in Florida, this Court held that 
"* * * the question involved here is one of public policy and should be decided on that ground. The view of the majority of states is that a parent or his representative cannot maintain an action in tort against an unemancipated minor child and the reason advanced for such rule is the necessity for the encouragement of family unity and the maintenance of family discipline."
We see no reason why the rule should not be the same where a minor child, acting through his natural parent, seeks to sue his parents for damages for their alleged negligence in not properly protecting the person of the minor child. The amended complaint was properly dismissed.
As to the striking of the supposed copy of an insurance policy, there was no *9 occasion for it to be among the Court files in the first place. There was no relationship or connection between the "Exhibit" and the Complaint. There was no marking on the document nor was it in anyway mentioned or referred to in the Complaint. So even if the "Exhibit" had been otherwise material, which it was not, it had no place among the Court papers. It was a renegade document and was properly stricken from the files.
The Order of Dismissal appealed from is affirmed.
Affirmed.
ALLEN, Acting C.J., and HOBSON, J., concur.