Peter WAGNER, By His Next Friend, D. Burt GRIFFITH, Appellant,

v.

A.O. SMITH, Skyline Harvestore Systems, Inc., and Galen Wagner, Appellees.

No. 69026.

Supreme Court of Iowa.

Nov. 23, 1983.

Rehearing Denied Dec. 21, 1983.

Alfred A. Beardmore, Charles City, for appellant.

Jon Stuart Scoles of Law Office of Warren L. De Vries, Mason City, for appellee Galen Wagner.

HARRIS, Justice.

In *Turner v. Turner*, 304 N.W.2d 786 (Iowa 1981), we abrogated the doctrine of absolute parental immunity in tort actions. In so doing we expressly reserved a question not then presented. Should immunity continue to exist in areas of parental authority and discretion? The facts here require us to decide the question. The trial court determined that the father here cannot be held liable on his four year-old son's claim of negligent supervision and dismissed such a claim against him. We affirm.

The challenged ruling was upon an application for adjudication of law points. We state the facts which the parties regard as uncontroverted. Defendant Galen Wagner is a farmer who owns several silos manufactured and distributed by the other defendants. Claims against the other defendants are not involved in this appeal. Corn is unloaded from the bottom center of these silos through a grain auger. When the silo is nearly empty it is necessary for someone to enter it and shovel the remaining corn into the auger while it is operating.

On May 28, 1981, Wagner and his thirteen year-old nephew, Scott, were emptying one of the silos. When the silo was almost empty Wagner sent Scott in to shovel the remaining corn into the operating auger. While working outside the silo, Wagner al-

lowed his four year-old son, Peter, to enter the silo and join Scott. After ten or fifteen minutes Peter's leg somehow became entangled in the auger. Scott managed to pull Peter out of the auger but not before it amputated Peter's leg a few inches below the hip.

Through a next friend Peter sued his father in tort, alleging his father had a duty to exercise due care for him and that "he did not do what an ordinarily reasonably prudent person—taking into account the parent-child relationship—would have done under similar circumstances...." After appearing, defendant Wagner filed the application which precipitated the ruling. Without deciding whether the trial court's ruling was final we granted permission for the appeal pursuant to Iowa rules of appellate procedure 1(c) and (2).

The question is one of policy. Policy considerations on the general subject of parental immunity were presented for both sides of the question in our majority and dissenting opinions in *Turner*. Obviously there was, and is, much to be said for both sides of the question.

■ It is the fundamental premise of tort law that the allowance of money damages in a proper case is in the public interest. Society feels impelled to allow for tort recoveries both to redress certain wrongs and to "engineer" social conduct. W. Prosser, Law of Torts § 3 (4th ed. 1971). We must decide whether the public interest, especially the best interests of children, would be better served by allowing a right of action against parents who negligently supervise their children.

On the one hand, from an injured child's point of view, the loss is just as real as if it would have been caused by a stranger. On the other hand, parental immunity has been supported in the belief that it enures to the ultimate benefit of the family and the child.

In *Turner* we listed seven justifications which had been advanced in support of immunity: (1) the danger of a parent later inheriting from the child for the parent's own negligence; (2) the drain on family funds; (3) the analogy to interspousal immunity; (4) the immunity of domestic government; (5) the danger of fraud; (6) the disruption of domestic tranquility; and (7) the need for parental discipline and control. *See Turner,* 304 N.W.2d at 787 (quoting from *Barlow v. Iblings,* 261 Iowa 713, 716, 156 N.W.2d 105, 107 (1968)). We said: "[f]orceful arguments have been advanced for retaining the doctrine, based on the 'domestic government' and 'parental discipline and control' concepts." *Id.* Notwithstanding the force of these arguments, they were insufficient to justify retention of the doctrine of absolute parental immunity. The question here is whether they are sufficient to justify retention of any of the doctrine. We think they are.

■ The rule we adopt is similar to that stated by the Wisconsin supreme court in *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193 (1963). We hold that a parent is immune from liability for alleged negligent acts emanating from the parent-child relationship if the act involves an exercise of: (1) parental authority over the child; or (2) parental discretion in respect to the provision of food, clothing, shelter, education, medical and dental services, and other care. *Cf. id.,* 20 Wis.2d at 413, 122 N.W.2d at 198; Annot., 6 A.L.R. 4th 1066, 1132–42 (1981). The *Goller* rule clearly is not without its critics. *See* 31 Drake L.Rev. 948, 953 (1981–82); Note, *The Reasonable Parent Standard: An Alternative to Parent-Child Tort Immunity,* 47 Colo.L.Rev. 795, 807–08 (1976). We are convinced the rule we adopt is in the long-range best interest of families and children, and will more justly compensate children's injuries.

■ Prospective damage awards for an injured child should be predicted at their "net" figure, after being reduced by costs to the child. In most cases the amount otherwise spent by parents for the care and rehabilitation of their child would be depleted. It would be depleted by the money the parents lose in defending either an indemnity action by a third party tortfeasor or a direct action brought by a "next friend" for their child. It would also be

depleted by the amount of judgment the child might otherwise have received from the third party tortfeasor. A considerable depletion would further result from the cost to the child in attorney contingency fees. Finally there would be the cost of administering a trust account for the damage award.

We are aware that most tort suits by a child against a parent involve liability insurance. But we think the possible existence of liability insurance is not a factor that should be considered. We can assume that future coverage for negligent supervision would either come at a high premium cost, or be obviated by a routine exclusion provision in liability policies.[1] Accident or health insurance seems to be the more appropriate means of ensuring that insurance funds will be available for the care of an injured child.

We also think parenting is too subjective and too personal a matter to lend itself to a "reasonably prudent" tort standard.

"Considering the different economic, educational, cultural, ethnic and religious backgrounds which must prevail, there are so many combinations and permutations of parent-child relationships that may result that the search for a standard would necessarily be in vain—and properly so. Supervision is uniquely a matter for the exercise of judgment. For this reason parents have always had the right to determine how much independence, supervision and control a child should have, and to best judge the character and extent of development of their child."

The mutual obligations of the parent-child relation derive their strength and vitality from such forces as natural instinct, love, and morality, and not from the essentially negative compulsions of the law's directives and sanctions. Courts and Legislatures have recognized this, and consequently have intruded only minimally upon the family relation.

*Holodook v. Spencer,* 36 N.Y.2d 35, 50, 324 N.E.2d 338, 346, 364 N.Y.S.2d 859, 871 (1974).

The trial court was right in holding that children may not recover from their parents for injuries caused by negligence of their parents in supervising them.

AFFIRMED.

All Justices concur except UHLENHOPP and McCORMICK, JJ., who dissent.

UHLENHOPP, Justice (dissenting).

I agree with the parental immunity test stated by the majority, but I think the parent does not come within that immunity in this case. A parent has discretion with respect to provision of food, education, and the other such parental items the majority enumerates, but I do not think a parent has discretion negligently to expose his child to personal injury any more than he can so expose the child of someone else. If he does so, he should be subject to tort liability the same as a stranger to the child would be liable.

I would reverse the judgment.

McCORMICK, J., joins in this dissent.

---

1. We note parenthetically that it would not be altogether disadvantageous to a liability insurance company if the parental immunity doctrine were completely abrogated. It is likely that parents would be routinely interpled on a cross-claim alleging negligent supervision whenever their child sues a stranger in tort.