## CULBERSON *v.* ALABAMA CONSTRUCTION COMPANY.

1. Although instructions of the court to the jury may state the law correctly, in the abstract, yet if they are not authorized by the evidence in the case, they are erroneous, and, if it is not apparent that the jury could not have been misled by them, are cause for a new trial.
2. Where a minor son, without his father's consent, makes a contract for his services with a third person, and the father knows that he is in the employment of such person, and neither makes any objection nor demands pay for his child's services from such employer, there is an implied assent by the father that the son shall receive his earnings in such employment.
3. Where a father sues one who, without his consent, has employed his minor son, to recover the value of his son's services while employed by the defendant, basing his action upon a contract implied from the circumstances of the case, and it appears that the employer, while such minor was engaged in his service, supplied him with necessaries for his support and maintenance, the recovery of the plaintiff should be limited to the reasonable value of the services, less the reasonable value of the necessaries so furnished.
4. A corporation which lawfully acquires all the property of a partnership does not thereby become responsible for the partnership's debts.

Submitted July 18, 1906.—Decided February 15, 1907.

Attachment. Before Judge Foute. City court of Cartersville. October 21, 1905.

Culberson, a resident of the State of Alabama, brought a suit, based on an attachment, in Bartow county, Georgia, against the Alabama Construction Company, an Alabama corporation, doing business in that county, for the recovery of $450, alleged to be due him by the defendant for the services of his minor son. The petition based upon the attachment alleged, that the defendant on

July 1, 1903, employed Kirkland Culberson, the plaintiff's son, then under the age of sixteen years, as a day laborer; that plaintiff protested against the employment of his minor son by defendant, and used repeated efforts to induce his child to return to his home, but that the officers and agents of the defendant company induced his child to remain in its employment and work for it, and that the boy did work for defendant from July 1, 1903, until March 1, 1905, for which the defendant was indebted to plaintiff $450, "the wages of his said minor child for said work, plaintiff alleging said services to be worth one dollar per day." The defendant denied all the allegations of the petition, except the allegation as to the suing out of the attachment and the allegation that defendant had refused to pay plaintiff the sum sued for, or any other sum. Upon the trial of the case, it appeared, from the evidence, that the plaintiff lived in Anniston, Ala., and that the services of his son, for which he sued the defendant, had been performed, in connection with railroad construction work, at and near various other places in Alabama and Cartersville, Ga. It also appeared that this railroad work was first carried on, and the plaintiff's son first employed thereon, by a partnership, consisting of D. B. Lacey and Mrs. Susan E. Jones, doing business under the firm name of the "Alabama Construction Company;" and that later this partnership was succeeded by a corporation, incorporated in the State of Alabama, under the same name, upon the application of D. B. Lacey and three other persons, not including Mrs. Jones, which corporation—the defendant in this case—continued the work of railroad construction and employed the plaintiff's son thereon. The jury found a general verdict in favor of the defendant; the plaintiff moved for a new trial, which was refused, and he excepted.

*Thomas W. Milner & Sons,* for plaintiff.

*John T. Norris,* for defendant.

EVANS, J. (After stating the facts.)

1. Complaint was made in the motion for a new trial that the court erred in charging the jury that a father's parental power over his minor child is lost, by voluntary contract releasing his right to a third person, by consent to the adoption of the child by a third person, by his failure to provide necessaries for his child, or his abandonment of his family, by his consent to the child's receiving the proceeds of his own labor, such consent being revocable

at any time, and by cruel treatment of the child; and that it was
for the jury to determine whether the plaintiff, in any one or more
of these ways, had lost control of his boy.   The assignment of error
was, that this instruction was erroneous, because "the issue before
the jury, under the evidence, was whether or not the father had
ever consented that his minor child [should] receive the proceeds
of his own labor, and whether such consent had been revoked by
the father; and there was neither contention nor evidence that the
father had lost his parental control in any of the other ways men-
tioned by the court.   The trial judge specifically approved this
ground of the motion and certified that the facts stated therein
were true.   So we must take the statement that there was no con-
tention that the father had lost his parental power in any of the
ways mentioned by the court, except by his consent to his son's
receiving the proceeds of his own labor, as being true.   It is evi-
dent from the excerpt from the charge set out in the motion for a
new trial that the judge, in instructing the jury as to how parental
power may be lost, read to them the provisions contained in the
numbered paragraphs of section 2502 of the Civil Code upon the
subject, merely omitting paragraph 5 in reference to the loss of
parental control by consent to the marriage of a minor child.   He
not only did this, however, but he instructed the jury that it was
for them to determine "if this father, in any one of these ways, or
any more of them, lost control of his boy."   So he was not merely
reading to the jury the provisions from this section of the code as
to the loss of parental power, in order that they might see that
one of the ways in which such power may be lost is by the father's
consent for his minor child to receive the proceeds of his own labor,
but also in order that they might consider whether this father had
lost control of his minor son in any one or more of the other ways
mentioned by the court.   This construction of this portion of the
charge is further shown to be correct by other excerpts from the
charge upon which error was assigned in the motion for a new
trial, wherein the jury were instructed that if they found that
the plaintiff had by voluntary contract released his parental right
to a third person, or failed to provide necessaries for his child, or
cruelly treated the child, or had "consented to his child being
adopted by the defendant," he could not recover, and the jury
must look to the evidence to see whether he had done either of

these things. As there was neither contention nor evidence as to the loss of the parental power in any way save by consent to the son's receiving the proceeds of his own labor, the court erred in these instructions. It has been so long and so repeatedly held by this court that a charge abstractly correct, but not warranted by the evidence, is erroneous, that we deem it unnecessary to cite any of the great number of cases to this effect. It not being apparent from the evidence that the jury could not have been misled by these repeated erroneous instructions of the court, a new trial should have been granted because of their existence.

2. Another assignment of error in the motion was, that the court erred in instructing the jury that if they believed that the plaintiff's minor son was in the employment of the defendant company, "with the knowledge of the father, and the father did not complain nor demand payment for his services, such failure would be in effect a ratification of such employment, and the father could not recover." The error assigned was that this instruction "was inapplicable to the facts of the case, as well as an erroneous statement of the law. It was not inapplicable to the evidence in the case, nor do we think it was an erroneous statement of the law. While the expression "ratification of such employment" may not have been strictly accurate in the connection in which it was used, the evident meaning was that, under the circumstances stated by the court, the father would have impliedly assented to the employment of his son by the defendant. Section 2502 of the Civil Code, as we have seen, expressly provides that the parental power of the father, including his right to the services of his minor child and the proceeds of his labor, may be lost by his consent to the child's receiving the proceeds of his own labor. The charge of the court, in effect, was that such consent of the father would be implied if he knew that his minor son had entered the employment of another and, with such knowledge, did not forbid such employment nor demand payment for the services of his son. This charge of the court was in accordance with the rulings in Whiting *v.* Earl and Trustee, 3 Pick. 202; Smith *v.* Smith, 30 Conn. 111; Armstrong *v.* McDonald, 10 Barb. 300; Gale *v.* Prescott, 1 N. H. 28. In the case first cited the court said: "We go so far as to say, that when a minor son makes a contract for his services on his own account, and the father knows it, and makes

no objection, there is an implied assent that the son shall receive his earnings." In the Connecticut case, "The plaintiff's minor son agreed with the defendant to work for him for the season, at certain monthly wages, to be paid to the minor. The plaintiff, who lived near by, knew of the agreement, and that his son was working for the defendant, but made no objection and gave the defendant no notice that he should demand his wages. After the work had been done and the defendant had paid the son, the plaintiff demanded his wages." It was held "that he was estopped from claiming them." In the opinion, Sanford, J., said: "The plaintiff's conduct was evidence of his assent to that contract, and its performance as well by the defendant as the son, and operates against the plaintiff as an estoppel upon his present claim. Knowing of the contract and having an opportunity to prohibit and prevent its execution, he remained silent, and thus induced the defendant very justly to infer his assent and approbation. If plaintiff can recover for these services, his conduct will have operated as a delusion and a fraud upon the defendant; but he is not entitled to such recovery." In the New York case it was held: "When a minor makes a contract for his services, on his own account, and the father knows of it, and makes no objection, *it seems* that there is an implied assent that the son shall have his earnings." The court cited for this Whiting *v*. Earle and Trustee, supra. In the New Hampshire case the court held that the parent's right to payment for his minor child's services "may be waived by acts evincing an assent to the minor's receiving payment himself." Our own case of *Wolf* v. *East Tenn. Ry. Co.*, 88 *Ga.* 210, is directly in line with these authorities. There a minor, by his father as his next friend, sued the railway company for damages arising from personal injuries received while in its employment, and the father sued the company for the loss of the services of his son, resulting from such injuries. The son testified that his father did not consent to his employment on the railroad, but knew of it and did not forbid it. It was held that a "nonsuit was properly granted as to the action in favor of the employee's father, his implied consent to the employment of his minor son by the railroad company being fairly deducible from the facts in evidence, and there being no proper foundation for an inference to the contrary."

3. The court charged the jury as follows: "Until majority the

child remains under the control of the father, who is entitled to his services, and the proceeds of his labor. I charge you that what is meant by the word 'proceeds' in this section is the proceeds of his labor reduced by the necessary expenses of maintenance. If you find from the evidence that the services of Kirkland Culberson were not worth more to the defendant company than his board, lodging, and clothing, then the plaintiff could not recover. The plaintiff could not require the defendant to pay all of Kirkland Culberson's expenses and then pay him for the gross value of his son's work, without crediting this amount with the amount expended by the defendant for the necessary expenses of the minor." Error was assigned upon this charge, as not being pertinent to the issues made by the pleadings and evidence and as being an erroneous statement of the law. The evidence showed that a part of the wages of the plaintiff's son were paid to him in necessaries furnished by his employer. As a mere abstract statement of the law, this instruction of the court was not exactly accurate, for a father maintaining his minor child at home, or supplying him with necessaries elsewhere, would be entitled to the proceeds of his labor, unreduced by the necessary expenses of his maintenance. The material question, however, is whether the charge of the court, as applied to the case on trial, was an erroneous statement of the law. The plaintiff did not sue to recover damages for the loss of the services of his son, but he waived all considerations of tort and sued upon an implied assumpsit, that is, upon an implied promise of the defendant to pay him the value of his son's services. When a promise is implied from the existence of certain circumstances, in order to ascertain the promise implied, all the pertinent circumstances must be taken into consideration, and not simply those which are favorable to one side only. Accepting the theory of an implied promise, the circumstance, not denied, that the defendant supported the plaintiff's son while he was engaged in its service was material in ascertaining what the implied promise of the defendant to the father was. For it could not be reasonably held that the defendant took the plaintiff's son into its employment, supplied him with necessaries while in such employment, and yet impliedly agreed to pay the plaintiff the entire abstract value of his son's services, without deducting therefrom the reasonable value of the necessaries furnished. In Adams v. Woonsocket Com-

pany, 11 Metc. (Mass.) 327, the plaintiff, whose minor daughter was employed by the defendant company at a distance of many miles from his residence, forbade the company to employ her any further, and gave notice that if it did, he should demand $3.50 per week for her time and labor, without any deduction on any account whatever, and also directed the company not to allow or pay her anything, either goods or money, on account of her labor. It was held that "in an action of assumpsit by the father against the company, to recover pay for his daughter's labor subsequently done for them, he was entitled to recover only so much as her labor was reasonably worth, deducting the price of board provided for her by them, without any deduction for clothing which they provided for her." In the opinion Dewey, J., after holding that the notice which the plaintiff gave the defendant company was wholly ineffectual to charge the defendant in any particular sum, said: "There was no special contract, therefore, as to the amount of wages; and in an action of assumpsit the plaintiff must rely upon the implied contract of the defendants to pay what the daughter's services were reasonably worth. If the defendants furnished her board, the sum to be recovered will be the value of the services of a person thus furnished with board by the employer. This seems to be reasonable, as the father could not have furnished board for her in his own family while she was thus in the employment of the defendants, he living at a distance from her. And it must be the proper rule in an action where the plaintiff waives the tort and sues upon an implied assumpsit. The claim of the defendants for articles for clothing for the minor, we think, stands upon a different footing. The father might well object to the expenditure on this account of any money for clothing for his daughter. No deduction should be made on that account." The distinction which the court here made between board and necessary clothing seems to have been based upon the idea that the father could not have furnished his daughter with board in his own family while she was in the employment of the defendant, but he could have supplied her with suitable clothing while thus employed. It may be true that the father could have supplied his daughter with necessary clothing while she was in the service of the defendant, but if he did not do so, and the defendants did, it seems to us that the clothing and the board would stand upon the same footing. For,

as we have said, when implying a contract from circumstances, all the pertinent circumstances must be taken into consideration. And in a case of this character it would seem that the implied contract of the employer was to pay the father the reasonable value of the services of his minor child when furnished with necessary board and clothing by the employer.

In a later decision by the same court, in a case where a father sued for the earnings of his minor son while in the employment of the defendants on board their whaling schooner, upon an implied promise of the defendants to the plaintiff, it was held: "In an action of contract by a father for the earnings of his minor son, employed without his consent, the measure of damages is, not what the son would have earned for the father during the time, but what he in fact earned in the service of the employer. The father in such a case can recover only what the son might have recovered had he been of age and competent to contract." Weeks v. Holmes, 12 Cush. 215. It appeared, from an agreed statement of facts in the case, that it was a well established and universal usage in the whaling business, "for seamen engaged therein, to sail upon a lay, or to receive in place of wages, for their time and services, a certain relative proportion of the proceeds of the voyage, such as their relative experience and skill may entitle them to, or such lay or proportion as they may agree upon beforehand;" that "the reasonable, usual, and only lay received by" green hands, such as the plaintiff's son, "was a one hundredth lay, or a one hundredth part of the proceeds of the oil taken upon the voyage, after deducting the proportion of the expenses of fitting the vessel and all advances made each one on account of the voyage." Chief Justice Shaw, delivering the opinion, said: "This is an action of contract on the implied promise by the defendants to the plaintiff, a promise implied from his relation of father entitled to the earnings of his son. Nothing can be claimed in this action for any supposed wrong in seducing the plaintiff's son, or employing him without his consent. After the service was done, the father steps in with his legal claim, denies the authority of his son to receive his own earnings, and in effect says to the defendants, that which you would have been bound legally and equitably to pay to him, had he been of age, or otherwise competent to contract, I require you to pay me. To this extent his claim is recognized, and no further. In determining

what that allowance shall be, the question is, not what the son would have earned for the plaintiff, but what the son earned of the defendants in their service. *Quantum meruit?* In considering what he did in fact earn, it appears to us, that the universal custom of the business, to pay by a lay or share, instead of monthly or other wages, is competent and proper. . . Upon the facts, the court are of opinion that the plaintiff is entitled to a fair share or lay; and this, we think, must be fixed as a one hundredth part, not because the minor agreed to it, but because it is shown to be a reasonable and fair lay, and, therefore, a just measure of the value of the services sued for. From this is to be deducted the advances of the defendants, for outfit and necessaries on the voyage, warranted by the like universal usage of the business; and as these exceed the lay, there are no net earnings to be recovered." It will be observed that the court, in implying the contract between the plaintiff and the employers of his minor son, took into consideration all the circumstances under which the minor was employed, the usages of the particular business, the advances made to the minor for necessaries, etc., and held that from the gross amount of the minor's earnings there should be deducted the advances of the defendants for his proportion of the expenses of the outfit and for necessaries furnished to him by them. So, notwithstanding the use which the court made of the universal custom of the business in which the plaintiff's son was employed, we think it clear that when the underlying principle of the case is followed, a father suing, upon an implied contract, for the value of his minor son's services to the defendant, can not recover the gross value of such services when the defendant has supported the minor while in his employment, but can only recover what the minor's services were reasonably worth when employed and supported by the defendant. For if, as appears to have been held by the court, a father, suing upon such an implied contract, can recover only what the son could have recovered, if he, being of full age when the services were rendered, had performed those services under an implied contract, then it must necessarily follow that the reasonable value of the maintenance furnished to the son by his employer must be taken into consideration when determining the amount due by the employer for the services rendered. In Sherlock *v.* Kimmel, 75 Mo. 77, it was held: "If a minor son hire himself out without the knowledge

of his father, the father may either adopt the contract and claim whatever is due under it, or he may repudiate it and claim the value of his son's services. In the latter event, if it appears that the employer has permitted the son to use part of his time for his own purposes, the measure of the recovery will be the value of his entire time, less the value of the privilege so accorded to him." There the plaintiff's son, while in the employment of the defendant, was allowed to devote part of his time to giving music lessons, for which he received pay; and the court rightly took this circumstance into consideration in determining what the implied contract with the father was. In Huntoon *v.* Hazelton, 20 N. H. 388, it was held that "If a minor son abscond from his father's house, and enter the service of one who for his labor furnishes the infant a reasonable support, the parent can not recover the son's wages, without deducting the amount of expense for such support." That ruling appears to have been based upon the idea that although a minor son who absconds from his father's house may not "carry with him the credit of the parent to the extent of procuring reasonable supplies, common humanity would require that he should be suffered to apply his own industry for the relief of his necessities;" as "without that privilege the minor would starve, and the law, which is really designed for the protection of infancy, would visit such fault or error as is here supposed with the penalty of the most debased form of vagrancy." In Dunn *v.* Altman, 50 Mo. App. 231, where the plaintiff, who sued for the value of his minor son's services, claimed that the boy was employed by the defendant without his consent and over his protest, the court said: "It seems to be conceded by the plaintiff in argument that even upon his own theory the defendant is entitled, to the extent to which he may have supplied the boy with necessaries, to an abatement of the amount due by the defendant to the plaintiff;" and cited Huntoon *v.* Hazelton, supra. But the court held that where, in such a case, the defendant "seeks to reduce the amount of recovery on the ground that he supplied the minor with necessaries, the burden is on him to show the extent of the necessaries supplied by him; and evidence that he paid wages to the minor, allowing the minor to apply the same as he wished, will not suffice, though it appears that the same were partially used by the minor in the purchase of necessaries." It follows from what we have said that, in our opinion,

the charge of the court which we have just been considering afforded no cause for a new trial.

4. The court charged the jury that they could not find against the defendant company "for any services the plaintiff's son [might] have rendered the Alabama Construction Company when it was a partnership, or which he might have rendered to Lacey and Jones, a partnership, or might have rendered to D. B. Lacey personally;" that the suit was proceeding against the defendant corporation, and the jury were to ascertain from the evidence what services had been rendered to the corporation. Error was assigned upon this instruction, upon the ground that it appeared from the evidence that the corporation had absorbed all the assets of the partnership, and "was, therefore, liable for the debt created by [plaintiff's son's] labor, the benefit of said labor having been received by the corporation." There was nothing to show that there had been any assumption by the corporation of debts of the partnership, or that it had acquired the partnership's property in fraud of creditors of the firm. A corporation which lawfully acquires the property of a partnership does not thereby become liable for the partnership's debts. Partners own the firm property just as individuals own their property, and "as the ordinary creditors of an individual have no lien on his property, and can not prevent him from disposing of it as he pleases, so the ordinary creditors of a firm have no lien on the property of the firm so as to be able to prevent it from parting with that property to whomsoever it chooses." 1 Lindley on Partnership (Rapalje's Am. ed.), 565-6; 22 Am. & Eng. Enc. L. 186. To the same effect, see *Veal* v. *Keely Co.,* 86 *Ga.* 130; *Ellison* v. *Lucas,* 87 *Ga.* 223.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*