47452.    ESCHEN v. RONEY et al.

ARGUED SEPTEMBER 14, 1972—DECIDED SEPTEMBER 22, 1972—
REHEARING DENIED DECEMBER 6, 1972—

*Anderson, Walker & Reichert, Albert P. Reichert, Jr.,* for appellant.

*Harris, Russell & Watkins, Joseph H. Davis,* for appellees.

CLARK, Judge. Does the doctrine of "parental immunity" in tort cases apply to third-party actions? That question is presented in this case which had its inception when a minor plaintiff, John W. Roney, received personal injuries while riding as a passenger in a family car owned by his mother, Mrs. June K. Roney, and being driven by his sister, which had a collision with an automobile driven by Lois W. Eschen. The instant suit was filed by the minor through his mother as next friend, to which defendant filed an answer denying negligence. She also instituted a third-party action under the family-car doctrine "for judgment over against third-party defendant, Mrs. June K. Roney, for contribution for all sums which may be adjudged against het." As such third-party defendant, Mrs. Roney made a motion to dismiss based upon her son being an unemancipated minor who could not sue his mother for negligence. This appeal is from a judgment sustaining that motion to dismiss.

The trial court is sustained upon the authority of *Shell v. Watts,*[1] 125 Ga. App. 542 (188 SE2d 269), a case quatuor pedibus currit to that sub judice, differing only as to consanguineous connection in that it involved inter-spousal immunity under a third-party complaint. In Headnote 6 Judge Randall Evans wrote: "It has been many times held that the public policy of this State prevents suits between members of a family, such as an unemancipated child against a parent, or wife against a husband, as such suits tend to disrupt the family tranquillity. *Bulloch v. Bulloch,* 45 Ga. App. 1 (163 SE 708); *Wright v. Wright,* 85 Ga. App. 721 (70 SE2d 152); *Stapleton v. Stapleton,* 85 Ga. App. 728, 729 (70 SE2d 156). Further, it is a general rule that one cannot do indirectly that which the law does not allow done directly. To allow the defendant Shell to have judgment against Watts for all sums adjudged against him by Watts'

[1]Reversed on other grounds by the Supreme Court in *Shell v. Watts,* 229 Ga. 474 (192 SE2d 265).

wife would be tantamount to allowing Watts' wife to sue her husband in tort. The court properly sustained the motion to dismiss the third-party complaint against Watts because there could be no contribution because of marital immunity. See *Heyman v. Heyman,* 19 Ga. App. 634 (1) (92 SE 25); *Chastain v. Chastain,* 50 Ga. App. 241 (3) (177 SE 828)." See also *Southern R. Co. v. Brewer,* 122 Ga. App. 292 (176 SE2d 665).

Scholarly counsel for appellant argues that analysis of the reasons given by this court in *Bulloch v. Bulloch,* supra, for establishment of the "parental immunity" rule in Georgia as a matter of public policy shows it should not apply in the instant situation. He supplements this by further legal ratiocination supported by those cases constituting exceptions to such doctrine. These are: *Farrar v. Farrar,* 41 Ga. App. 120 (152 SE2d 278), which dealt with an emancipated child after reaching majority; *Wright v. Wright,* 85 Ga. App. 721 (70 SE2d 152), where the parent forfeited its parental authority by a wilful tort; and *Stapleton v. Stapleton,* 85 Ga. App. 728 (70 SE2d 156), which permitted the child to sue the parent's employer. These cases do not apply here.

Counsel also calls our attention to two cases wherein the United States Court of Appeals for the Fifth Circuit in compliance with the Erie doctrine (Erie R. Co. v. Tompkins, 304 U. S. 64 (58 SC 817, 82 LE 1188, 114 ALR 1487)) sought to apply Georgia law on the right of a minor to maintain a negligence action against a deceased parent's estate. In the first of these cases, Union Bank &c. Co. v. First Nat. Bank &c. Co., 362 F2d 311, the action was permitted against a mother's estate. The court reasoned that with both parents being killed in the auto accident which brought about the suit that there could be no disruption of family unity, one of the motivations for creation of parental immunity, and that the existence of liability insurance removed the possibility of discriminatory impact upon the family finances for the benefit of one child, which had been another reason mentioned in *Bulloch v. Bulloch.* Then by analogy to *Cox v. DeJarnette,* 104 Ga. App. 664 (123

SE2d 16), in which it was held that charitable immunity did not exist for tort liability to the extent of coverage afforded by liability insurance, it was ruled that the estate of the deceased mother was not immune to the extent of the coverage. It should be noted the court here recognized that Georgia law did not permit an unemancipated minor to recover against its parents for a tort caused by ordinary negligence. When this matter of liability insurance was considered in *Harrell v. Gardner,* 115 Ga. App. 171 (154 SE2d 265), our court did not accept the suggestion concerning the existence of liability insurance, but quoted from the *Bulloch* case that liability insurance would be irrelevant. In the light of this Georgia ruling, Barnwell v. Cordle, 438 F2d 236, undertook "to review the development of the Georgia doctrine of parental immunity and the foundations which support it." P. 238. In doing so, the Federal court dealt with those exceptions which are already mentioned in this opinion, and concluded there was a cause of action for the benefit of a permanent quadriplegic[2] minor "which he was prevented from converting into a judgment for howsoever long his father lived because of the doctrine of parental immunity." P. 241.

The Federal appellate court may have been influenced by a nation-wide trend towards abolition of the parental immunity doctrine[3] but the Court of Appeals of Georgia does not indulge in "judicial legislation." For example, *Stovall & Co. v. Tate,* 124 Ga. App. 605 (184 SE2d 834) declined adop-

---

[2] As we hold our Fifth Circuit Judges in high regard and with respect, would it be *lese majeste* to comment "hard cases make bad law?"

[3] See Briere v. Briere, 107 N. H. 432 (224 A2d 588) (1966); Brennecke v. Kilpatrick, 336 S. W. 2d 68 (Mo. 1960); Midkiff v. Midkiff, 201 Va. 829 (113 SE2d 875) (1960); France v. A. P. A. Transport Corp., 56 N. J. 500 (267 A2d 590) (1970); Gibson v. Gibson, 3 Cal. 3d 914 (92 Cal. Rptr. 288, 479 P2d 648) (1971); 3 Personal Injury Commentator 42; 22 Mercer L. Rev. 803.

tion of the strict liability doctrine on manufactured products as being a matter for the legislature. *Henry Grady Hotel Co. v. Sturgis,* 70 Ga. App. 379 (28 SE2d 329), *Best v. State,* 109 Ga. App. 553 (136 SE2d 496) and *Hyde v. Atlantic Steel Co.,* 112 Ga. App. 136 (144 SE2d 232) are further illustrative of our court recognizing that we are not to encroach upon the legislative domain.[4] Where there is an established legal doctrine such as this court enunciated in *Bulloch v. Bulloch,* supra, "under the public policy of this State, as expressed in the public laws" and it has been consistently followed for thirty years, we regard any change as being a matter for the legislature.

*Judgment affirmed. Eberhardt, P. J., Pannell, Quillian and Evans, JJ., concur. Hall, P. J., concurs specially. Bell, C. J., Deen and Stolz, JJ., dissent.*

ON MOTION FOR REHEARING.

CLARK, Judge. In his motion for rehearing appellant's able attorney ardently argues his abhorrence to our adherence to stare decisis. He has been successful in persuading our colleague Judge Braswell Deen to withdraw his original concurrence and file a dissent, which under our practice converts this case into a full court decision.

We recognize some jurisdictions have no hesitation in legislation by litigation. Those courts have regarded hitherto accepted legal doctrines such as intra-familial immunity as being anachronisms which should be discarded.

Such departure from the wisdom of the past has not been universal. An example dealing with the parent-child im-

---

[4] A view to which we subscribe was stated by the late Justice Hugo L. Black in affirming the Georgia Supreme Court case of *Evans v. Abney,* 224 Ga. 826 (165 SE2d 160) when he concluded the majority opinion in Evans v. Abney, 396 U. S. 435, 447 (90 SC 628, 24 LE2d 634), with this statement: "The responsibility of this court, however, is to construe and enforce the Constitution and laws of the land as they are and not to legislate social policy on the basis of our own personal inclinations."

munity doctrine that is most analogous to our instant case is the decision rendered June 1972 by the Supreme Court of North Carolina in Skinner v. Whitley, 281 N. C. 476 (189 SE2d 230). Our sister jurisdiction declined to abandon the time-honored rule of parental immunity in language and reasoning stated so well that we repeat much of what is said therein. It is there recognized the great majority of American jurisdictions adhere to the parental immunity doctrine because "this rule implements a public policy protecting family unity, domestic serenity, and parental discipline." P. 478. The court points out at p. 480 that "An examination of cases applying the parental immunity doctrine reveals five policy reasons primarily relied on to support it: (1) disturbance of domestic tranquility, (2) danger of fraud and collusion, (3) depletion of the family exchequer, (4) the possibility of inheritance, by the parent, of the amount recovered in damages by the child, and (5) interference with parental care, discipline and control. However, domestic tranquility and the discipline and control of the family's children are the policy reasons most frequently offered."

The North Carolina court's research developed the same conclusion reached in our study, that no state has totally abrogated parental immunity even though a minority of the states have modified the doctrine. Even those states generally express such modifications as being exceptions to the immunity rule. After pointing out that such modifications would create more problems and inequities than it cures, the North Carolina court uses this graphic language: "piecemeal abrogation of established law by judicial decree is, like a partial amputation, ordinarily unwise and usually unsuccessful." P. 484.

To this court the rule of stare decisis is salutary because it preserves the harmony and stability of the law and requires that "in determining a case the court is not concerned with what the law ought to be, but its sole function is to declare what the law, as applicable to the facts of the case, is." 21 CJS 304, § 187. As was said in *Shaw v. State*,

60 Ga. 247, 253, "It is of more practical utility to have the law settled and let it remain so than to open it to new constructions, however obvious such constructions may appear, as the personnel of the court may change. Stare decisis is conservatism in practice, and conservatism is the preservation of the wisdom which comes from the experience of the past." The great Chief Justice Logan Bleckley who is quoted in our colleague's dissent, himself said in his concurring opinion in *Blair v. State,* 81 Ga. 629, 631 (7 SE 855) that ". . . it [the proceeding] appears to me to be violative of principle, but I yield to authority and do not purpose to follow my own head against the adjudications of wiser judges."

Let us hope this court will never permit its decisions to be placed "into the same class as a restricted railroad ticket, good for this day and train only," to quote the apt phrase of Justice Owen J. Roberts in his dissent in Smith v. Allwright, 321 U. S. 649, 669 (64 SC 757, 88 LE 987, 151 ALR 1110).

"'Very weighty considerations underlie the principle that courts should not lightly overrule past decisions. Among these are the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments. The reasons for rejecting any established rule must always be weighed against these factors.' Moragne v. States Marine Lines, 398 U. S. 375, 403 (90 SC 1772, 26 LE2d 339)." *Crystal Springs Bleachery v. Roach,* 123 Ga. App. 364, 368 (181 SE2d 79).

The writer of this opinion recognizes a simple disposition of appellant's request for deviation from the doctrine of stare decisis would have been denial of the motion for rehearing on the authority of *Frazier v. Southern R. Co.,* 200 Ga. 590, 596 (37 SE2d 774): "Decisions by the Court of

Appeals establish a precedent for that court and for the superior courts, unless disapproved by the Supreme Court or made obsolete by subsequent statutory enactment." Such easy determination, however, would be contrary to the zeal and dedication which I have observed in the conduct of my eight colleagues during the time I have been privileged to serve on this bench. Their earnest consideration of all points submitted by counsel may result in lengthy opinions but the result is that Georgia's attorneys who undertake necessary research for the cause of their clients know their arguments are fully considered even though our decisions may be adverse to their contentions.

*Judgment adhered to and motion for rehearing denied.*

(Upon rehearing the original special concurrence by Judge Deen was withdrawn and a dissenting opinion filed by him. This brought about consideration by the full court. Upon such consideration the additional opinion was prepared by Judge Clark. Thereupon the motion for rehearing was denied and the judgment adhered to with Presiding Judge Eberhardt, Judges Pannell, Quillian and Evans concurring. Presiding Judge Hall filed a special concurrence in the affirmance. The dissent of Judge Deen was joined in by Judge Stolz, who also filed an additional opinion, which special dissent was joined in by Chief Judge Bell.)

HALL, Presiding Judge, concurring specially. Speaking of intra-family immunity, Prosser has aptly said: "Few topics in the law of torts, in view of modern economic, social and legislative changes, display in their treatment greater inconsistency and more unsatisfactory reasoning." Prosser on Torts (2d Ed.), p. 670, § 101. See also 41 ALR3d 904-980. Stare decisis has practical utility but is hardly a reason to refuse to reconsider judge-made law based only on public policy, which is among the most mutable of concepts. "Adherence to precedent must . . . be the rule rather than the exception . . . [However], few rules in our time are so well established that they may not be called upon any day to justify their existence as means adapted to an end." Cardozo, The Nature of the Judicial Process, pp. 34, 98. It can be

said that few of the classical reasons stated for the immunity have any relevance to the realities of modern litigation attempted in the family area. One commentor after another has attacked the policy reasoning of domestic tranquility, parental control and depletion of the family exchequer. It is not necessary to rehash the arguments here.

The real issue is whether a viable rationale does exist for the continuation of the immunity. To answer this we must also face squarely the subject of liability insurance. It is begging the question to call it irrelevant because no legal liability pre-exists; and it is intellectually dishonest to use it as a bootstrap to create liability without more than, at best, a passing mention of it.

Realistically, we know that negligence actions between an unemancipated child and parent or between spouses would rarely, if ever, be brought unless there were insurance. We should frankly acknowledge that the vast bulk of family suits would be "friendly" (with, e.g., one parent acting as next friend against the other) and all the possibilities for collusion would be present. What we must ask is whether, in view of intolerably crowded court dockets, the already oppressive cost of liability insurance and the ready availability of other forms of insurance protection against family loss, we should *add* one more expensive, time-consuming, *adversarial-in-form-only* proceeding to our system. One modern trend may be to allow intra-family liability; but another modern trend, of much greater significance to the survival of our judicial system, is to eliminate certain inappropriate areas of the law from the courts. See Frank, American Law: The Case for Radical Reform (1969).

Considering liability insurance from another angle it ought to be perfectly apparent that a judicial declaration significantly increasing the coverage will automatically result in a steep, over-all increase in premiums. The only way to avoid this result would be to encourage the insurance companies to make actuarial studies and then offer policies in which the insured may opt, for a lower premium, to exclude family coverage or vice versa. This, however, requires

at least decent notice to the companies and undoubtedly some changes in our insurance statutes. The result otherwise is manifestly unfair to those people who: have provided their family with life, health, accident, and disability insurance; have absolutely no desire to engage in an intrafamily lawsuit to become compensated for loss; and who do not care to pay higher rates for automobile or homeowner's insurance for the benefit of those who do not either care one way or another or who have, most likely, given it no thought at all.

There is also another problem involved in considering immunity both in this case and in its predecessors. We have tended to forget there are two kinds of stare decisis. One is precedent in the common law and is subject to much greater flexibility in changing times. *American Broadcasting &c. v. Simpson,* 106 Ga. App. 230, 237 (126 SE2d 873). The other is judicial interpretation of a statute which then becomes an integral part of the statute and is subject properly to legislative change alone. See *Gulf C. & S. F. R. Co. v. Moser,* 275 U. S. 133 (48 SC 49, 72 LE 200); *Walker v. Walker,* 122 Ga. App. 545 (178 SE2d 46). Family immunity questions arise for both personal injury (common law) and wrongful death (statutory). See *Horton v. Brown,* 117 Ga. App. 47 (159 SE2d 489), cert. denied, 117 Ga. App. 879; *Harrell v. Gardner,* 115 Ga. App. 171 (154 SE2d 265). While in *Horton* four judges of this court dissented to the holding that children could not sue their *stepfather* for the wrongful death of their mother, all nine judges agreed that the family immunity doctrine applied to statutory wrongful death actions. It is true that Barnwell v. Cordle, 438 F2d 236, a Fifth Circuit diversity case arising in Georgia, conflicts with the above authorities and produces a different result in Federal diversity cases. However, the application or non-application of the Erie doctrine is a matter exclusively within the jurisdiction of the Federal courts. As we are now bound to uphold immunity by prior interpretations of our wrongful death statutes, it would be unjust and inconsistent to deny it for personal injury.

The case of *Cox v. DeJarnette,* 104 Ga. App. 664 (123 SE2d 16) is not in conflict with our holding here. It held that the doctrine of charitable immunity in Georgia was not to render the charity immune from suit but merely to see that "charity trust funds are not to be depleted by subjection to liability for negligence." P. 670. If a charity wishes to purchase liability insurance for the sole purpose of providing non-charity trust funds to cover its negligence actions as to *third persons,* why should any court interpose its objection?

As to the problem of contribution, I am aware of the apparent inequitable result of applying the immunity doctrine when you have a hypothetically 90 percent negligent parent. However, this is only one of many other instances where a joint tortfeasor cannot be reached for contribution. A prime example is insolvency. Both Georgia law and the Uniform Contribution Among Tortfeasors Act recognize the principle that the right of contribution is limited to persons whom the injured could hold liable personally. *Southern R. Co. v. Brewer,* 122 Ga. App. 292 (176 SE2d 665); 9 U. L. A. 156. This principle is "recognized and applied with practical unanimity" throughout the United States. 19 ALR2d 1003; 34 ALR2d 1107; 60 ALR2d 1368. To hastily change the law on liability in order to achieve a more equitable means of contribution is a backward approach. The two opposing ideas must be balanced against one another. For the reasons stated above, I must adhere to our present law on family immunity. Reason and experience demonstrate that these precedents still justify their existence.

DEEN, Judge, dissenting on rehearing. This case presents the same factual situation and reaches the same conclusion as Emmert v. United States, 300 FSupp. 45, 48. There a collision between a car owned by the minor plaintiffs' father and vehicle owned by the U. S. Government resulted in an action by the children against the United States as sole defendant. The United States filed a third-party complaint against the father who was operating the vehicle in which the plaintiffs were riding. Holding that the "doctrine

of intra-family immunity is firmly entrenched in Tennessee" the court dismissed the third-party complaint, pointing out, however, that other jurisdictions have significantly continued the trend of disfavoring the doctrine. For example, in Gelbman v. Gelbman, 23 N. Y. 2d 434 (245 NE2d 192), New York expressly abolished the defense by overruling an earlier case, Badigan v. Badigan, 9 N. Y. 2d 472 (215 NYS2d 35, 174 NE2d 718). This court could and in my opinion should do the same. As I stated in my dissent to *Harrell v. Gardner*, 115 Ga. App. 171, 177 (154 SE2d 265): "It thus becomes obvious that the mere fact of relationship is not of itself sufficient to deny to any party to the litigation a right which he otherwise has under the law." We are dealing here not with statute law but with judge-made law, and we cannot lay the blame entirely on the Legislature when we persist in following anachronistic notions.

In this case it appears to me that we are doing exactly what the majority opinion rightly says cannot be done: that is, allowing to be done indirectly what cannot be done directly. Let us assume that the plaintiff's mother, Mrs. Roney, was 90% negligent in the collision that injured the minor plaintiff. Let us assume that he can and does prosecute this case to judgment against Eschen and recovers 100% of his damages. Since Eschen is barred from an action for contribution against Mrs. Roney, he is denied recovery of the 90% of the judgment for which he was not theoretically liable, having been only 10% at fault, and therefore John Roney, who could not have recovered this sum directly from his mother has nevertheless restored it to the family treasury by the indirect method of recovering it from one who has no recourse, although the fault, as well as the injury, was intra-familial.

If, after judgment, Eschen should sue Mrs. Roney for contribution, I should like to assume that this might be done because with two lawsuits, neither involving more than one family member, this court might well hold that the "family tranquility" is not disturbed by pitting two members directly against each other in the same action. However, in

view of the holding in *Southern R. Co. v. Brewer,* 122 Ga. App. 292 (176 SE2d 665) that a *joint tortfeasor* means one who may be jointly sued by the *original plaintiff,* this is obviously untenable. As to the lengths to which the family immunity doctrine can be carried, see *Horton v. Brown,* 117 Ga. App. 47 (159 SE2d 489).

Justice Bleckley observed in *Ellison v. Ga. R. & Bkg. Co.,* 87 Ga. 691, 696 (13 SE 809): "With these exalted tribunals who live only to judge the judges, the rule of stare decisis is not only a canon of the public good, but a law of self-preservation. . . Nevertheless, without serious detriment to the public or peril to themselves, they can and do admit now and then, with cautious reserve, that they have made a mistake. . . Indeed, reversion to truth in some rare instances is highly necessary to their permanent well-being." The Supreme Court of Georgia recently concurred that "the doctrine of stare decisis should not be followed to the extent that error may be perpetuated." *Humthlett v. Reeves,* 211 Ga. 210, 215 (85 SE2d 25).

The law is not a dead-end street. Courts are bound by the Constitution, the statutes, and the judicial precedents, but it would be less than honest to say judicial precedents may never be re-examined, and the legislature should not in every instance be blamed because it has not corrected judicial error, which I consider the present types of application of the "family harmony" doctrine to be. I am not even sure that our own precedents do more than uphold the decision in this case in the most general way; I do not believe they constrain us to what I feel to be palpable injustice. *Shell v. Watts,* 125 Ga. App. 542 (188 SE2d 269) having been reversed by the Supreme Court need be of no concern to us. Let us examine the authorities upon which Division 6 was based. In *Bulloch v. Bulloch,* 45 Ga. App. 1 (163 SE 708) it was held that a minor under the age of 14 could not file an action for pain and suffering against his father due to simple negligence on the part of the latter. The reason given was that the child was under his father's control, and the father was responsible for his maintenance under *Code*

§§ 74-104, 74-105, and that therefore under the public policy of this State "as declared by the public laws" such a child could not bring the action against his father in an adversarial proceeding and still remain under his control. I have no quarrel with this disposition of the case when confined to its immediate framework.

Next comes *Chastain v. Chastain,* 50 Ga. App. 241 (177 SE 828), where a wife filed suit against· her husband seeking damages for the death of their five-year-old child. As I read this case the decision is two-pronged: (a) Under *Bulloch* a five-year-old child could not sue its father for simple negligence, so no derivative right of action exists, and (b) under *Heyman v. Heyman,* 19 Ga. App. 634 (92 SE 25), a wife may not sue her husband on a cause of action personal to herself, so that (c) the conclusion is that no right of action, either derivative or direct, could justify the litigation.

In 1952, the Court of Appeals wisely saw fit not to extend the rule beyond (a) the child himself and (b) simple negligence. *Wright v. Wright,* 85 Ga. App. 721 (70 SE2d 152) holds that since a wilful or malicious act may forfeit parental control under *Code* § 74-108, a minor may directly sue her father for injuries sustained in an automobile collision resulting from wilful and wanton misconduct on his part. This case cites *Fowlkes v. Ray-O-Vac Co.,* 52 Ga. App. 338 (183 SE 210), where it had already been held that "the rule is different, and such an action is maintainable, if the child was emancipated at the time of the tort and the action," citing *Hargrove v. Turner,* 112 Ga. 134 (37 SE 89, 81 ASR 24); *Culberson v. Alabama Constr. Co.,* 127 Ga. 599, 600 (56 SE 765, 9 LRA (NS) 411, 9 AC 507); *Farrar v. Farrar,* 41 Ga. App. 120 (3) (152 SE 278) and *Coleman v. Dublin Coca-Cola Bottling Co.,* 47 Ga. App. 369 (2) (170 SE 549). And *Stapleton v. Stapleton,* 85 Ga. App. 728 (70 SE2d 156) established that an unemancipated minor might sue the father's employer for simple negligence of the father as to which the employer could be liable only on the theory of respondeat superior, and thus collect damages based on the

parent's tort, so long as the suit was not brought directly against the latter. In such a case could it consistently be held that the employer, if it wished, could not sue the employee in a separate action to recover damages due to the latter's negligence committed within the scope of his employment?

It thus appears that all State court cases to date which have considered the public policy inhibition against such actions have been limited directly to application *only* when there is a damage suit filed directly against a parent by a minor child who is under the power and control of that parent. Federal cases concerning themselves with Georgia law have done likewise, as illustrated by Barnwell v. Cordle, 438 F2d 236, where only the judgment, not the right of action, was curtailed.

There is no statutory law, and in my opinion no case law in this State, which prohibits the third-party action. I would accordingly reverse.

I am authorized to state that Judge Stolz concurs in this dissent.

STOLZ, Judge, concurring specially in dissent. Until fairly recently, there were three areas of general immunity from tort liability in our law: governmental immunity, charitable immunity, and parental immunity. Each of these doctrines originally came to us through the common law. Governmental immunity was later incorporated into our statutory law, the other two doctrines rest exclusively on court decisions— judge made law. Each doctrine was founded on public policy, i.e., "it would be unconscionable to allow a subject to sue the sovereign"—"We mustn't allow the assets of a charity to be depleted"—"For child to sue parent would destroy the tranquility of the family."

Our laws are rules regulating the relationship between the members of our society. Laws are changed periodically as society changes and in recent years we have observed most significant changes in our society. As a result of this change in society, the General Assembly enacted *Code Ann.* § 56-2437 (1, 2) (Ga. L. 1960, pp. 289, 673) and substan-

tially modified the doctrine of governmental immunity. In 1961, this court, engaging in what the majority would hold to be "judicial legislation," substantially modified the doctrine of charitable immunity in *Cox v. DeJarnette,* 104 Ga. App. 664 (123 SE2d 16). In *Cox,* our court specifically recognized that the doctrine of charitable immunity was established in our law (p. 671), but went on to modify that doctrine. The rule expressed in *Cox* was subsequently approved by a unanimous decision of our Supreme Court. *Morehouse College v. Russell,* 219 Ga. 717 (135 SE2d 432). Far from being an encroachment on the legislative domain, this was our court's recognition that the doctrine of total charitable immunity had lost its relevance in our society. Indeed, it is basic to our system of jurisprudence that judicial decisions are constantly reviewed by the courts. It strains judicial credibility to hold that cases of first impression can be changed only through statutory law.

The majority opinion on rehearing re-emphasizes the rule of stare decisis to the point where judicial decisions are irrevocably cast in a mold—never to be modified or changed. Fortunately, this court has never allowed itself to be so cast. Obviously, if the majority view of stare decisis had prevailed, the decision in *Cox* could not have been reached. At the risk of seeming inconsistent, I would observe that the decision in *Cox* affords ample basis for this court to change the doctrine of parental immunity under the rule of stare decisis.

Perhaps in our zeal to expound our philosophy we have overlooked how basically simple this case really is. From the facts as outlined in the majority opinion it is readily perceived that there is no effort by the unemancipated child (plaintiff) to sue his mother. The suit was brought only against the defendant Mrs. Eschen, who in turn brought a third-party action against the plaintiff's mother for contribution. The two issues, liability and contribution, can be severed for trial purposes. *Code Ann.* § 81A-114 (a) (Ga. L. 1966, pp. 609, 627; 1969, p. 979). "(1) Where the tortious act does not involve moral turpitude, contribution among

several trespassers may be enforced just as if they had been jointly sued. (2) If judgment is entered jointly against several trespassers, and is paid off by one, the others shall be liable to him for contribution." *Code Ann.* § 105-2012 (Ga. L. 1966, p. 433). Thus it is clear that the defendant has a *statutory right* to seek contribution in the manner she is attempting. There is no action by the unemancipated child (plaintiff) against his mother. There is no activity by the child which could remotely be construed to "adversely affect the domestic tranquility." Here, the action against the parent is by the defendant, a stranger to the household and an adversary in the litigation. No filial or consanguineal relationship exists. Further, the defendant (third-party plaintiff) in seeking contribution is exercising a specific right granted by statute. Should the statutory public policy of allowing contribution between joint tortfeasors yield to the antiquated, anachronistic doctrine of parental immunity? I think not.

I am authorized to state that Chief Judge Bell and Judge Deen concur in this dissent.