414 So.2d 1066 (1982)
Sylvia Elaine ARD, a/k/a Elaine Clary Ard, and Allstate Insurance Company, Petitioners,
v.
Douglas Perry ARD, As Guardian Ad Litem for Benji Dwain Clary, Respondent.
No. 60475.
Supreme Court of Florida.
April 29, 1982.
Edward P. Nickinson, III, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Pensacola, for petitioners.
John E. Venn, Jr. of Smith, Sauer & Venn, Pensacola, for respondent.
Larry Klein, West Palm Beach, for The Academy of Florida Trial Lawyers, amicus curiae.
McDONALD, Justice.
The First District Court of Appeal has certified both that the following question is of great public importance and that its decision is in direct conflict with decisions of other district courts on the same question of law:[1]
WHETHER AN UNEMANCIPATED MINOR CHILD MAY MAINTAIN A NEGLIGENCE ACTION AGAINST HIS PARENT.
We have jurisdiction.[2]
Benji Dwain Clary is the minor son of Sylvia Elaine Ard. The complaint alleged that she negligently unloaded him from a motor vehicle, thereby placing him in a dangerous and perilous position and that the infant sustained serious injuries when he was run over by another vehicle. It further alleged that, at the time of the accident, Sylvia Elaine Ard was covered by liability insurance with defendants, Allstate *1067 Insurance Company and Travelers Insurance Company.
The defendants raised the doctrine of parental immunity as a defense, and the trial court granted a motion for summary judgment on the basis of that immunity. On appeal, the First District reversed the trial court and allowed an action by an unemancipated minor child against his parent.
While we reaffirm our adherence to parental/family immunity, we hold that, in a tort action for negligence arising from an accident and brought by an unemancipated minor child against a parent, the doctrine of parental immunity is waived to the extent of the parent's available liability insurance coverage. If the parent is without liability insurance, or if the policy contains an exclusion clause for household or family members, then parental immunity is not waived and the child cannot sue the parent.
The doctrine of parental/family immunity did not have its origin in the common law of England as did interspousal immunity. See Raisen v. Raisen, 379 So.2d 352 (Fla. 1979), cert. denied, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980). Rather, this doctrine has been traced back to a Mississippi case which based its decision on the "peace of society ... [and] the repose of families." Hewellette v. George, 68 Miss. 703, 711, 9 So. 885, 887 (1891).
Florida adopted this rule and has recognized it in several cases. Orefice v. Albert, 237 So.2d 142 (Fla. 1970); May v. Palm Beach Chemical Co., 77 So.2d 468 (Fla. 1955). In Orefice the mother of a child killed in an airplane crash sought recovery in both her and her son's names from the owners of the plane. One owner was the boy's father, and, as to that claim, the trial court dismissed the suit. The court also dismissed the suit on behalf of the boy's estate brought against the father's estate. In affirming the dismissals this Court stated:
It is established policy, evidenced by many decisions, that suits will not be allowed in this state among members of a family unit for tort. Spouses may not sue each other, nor children their parents. The purpose of this policy is to protect family harmony and resources.
237 So.2d at 145. Further, this Court has recognized the duty of parents to nurture, support, educate, and protect minor children, and a child has a right to enforce the discharge of this duty. Finn v. Finn, 312 So.2d 726 (Fla. 1975). To reduce the available assets of the family through a straight suit is to reduce the amount available for support, education, and protection of the family as a whole.
Protecting the family unit is a significant public policy behind parental immunity. We are greatly concerned by any intrusion that might adversely affect the family relationship. Litigation between family members would be such an intrusion.
Recently, there has been a trend toward abrogating or limiting parental immunity. While many states still recognize this immunity,[3] the changes in contemporary conditions and public policy have caused numerous jurisdictions to restrict this doctrine where the policies behind it have lost their viability. In the jurisdictions that have abolished or limited the application of the *1068 doctrine,[4] a majority of the decisions deal with the negligent operation of a motor vehicle by one of the parents.
For many of these states, a major justification for this abrogation has been the development and widespread use of liability insurance. The presence of this type of insurance cannot create a liability where none previously existed, but, rather, forms the basis for the recognition of the change in conditions upon which the public policy behind the immunity is based. Several policy reasons have been relied on to justify this immunity. They include the preservation of domestic harmony and tranquility; depletion of the family assets in favor of the claimant at the expense of the other family members; danger of fraud and collusion between the parent and child when insurance is involved; interference with parental care, discipline, and control; and the possibility of inheritance by the parent of the amount recovered by the child.[5]
Those courts that have recognized the use of insurance in their consideration of the question point out the fallacies that form the basis of several of these policies. In Sorensen v. Sorensen, 369 Mass. 350, 339 N.E.2d 907 (1975), an unemancipated minor brought suit by her mother and next friend against her father for injuries received in an automobile collision. In a thorough examination of the immunity and the policy behind it, the Supreme Judicial Court of Massachusetts held that in a tort action for negligence (a) arising from an automobile accident and (b) brought by an unemancipated minor child against a parent the doctrine of parental immunity would be abrogated to the extent of the parent's automobile liability insurance coverage. The court stated:
[I]nsurance cannot create liability where no legal duty previously existed ..., it remains, nevertheless, a proper element in a discussion of the public policy supporting abrogation of parental immunity. "Where such insurance exists, the domestic tranquility argument is hollow, for in reality the sought after litigation is not between child and parent but between child and parent's insurance carrier." Streenz v. Streenz, 106 Ariz. 86, 88 [471 P.2d 282, 284] (1970).
369 Mass. at 362, 339 N.E.2d at 914. In analyzing the effect of allowing suit where liability insurance is involved the court stated:
When insurance is involved, the action between parent and child is not truly adversary; both parties seek recovery from the insurance carrier to create a fund for the child's medical care and support without depleting the family's other assets. Far from being a potential source of disharmony, the action is more likely to preserve the family unit in pursuit of a common goal  the easing of the family financial difficulties stemming from the child's injuries.
Id. (footnotes omitted).
When recovery is allowed from an insurance policy the claimant will not force a *1069 depletion of the family assets at the expense of the other family members. As stated in Sorensen, rather than a source of disharmony, the action is more likely to ease the financial difficulties stemming from the injuries.
The possibility of fraud or collusion by family members in dealing with liability insurance has traditionally been an argument in favor of both parental and interspousal immunity. We recognize that the possibility of fraud exists in every lawsuit but reject the contention that such possibility still forms a valid justification for denying a child compensation for injuries negligently inflicted by the parent when the immunity is waived by the presence of insurance. On this point we agree with the comments that the Indiana Supreme Court made when it discussed fraudulent collusion between spouses in Brooks v. Robinson, 259 Ind. 16, 284 N.E.2d 794, 797 (Ind. 1972):
The possibility of fraud and collusion exists in all litigation. However, we are not convinced that the danger is so great when the plaintiff and defendant are also husband and wife that judicial relief should be summarily denied. Furthermore, it should not be overlooked that the testimony of both parties will be extremely vulnerable to impeachment at trial on the grounds of bias, interest and prejudice. The trial court's responsibility, indeed, its duty, to properly instruct the jury on the credibility of witnesses and the rules governing the weight of evidence will remain unchanged, and, as was stated in United States v. Freeman (2d Cir.1966), 357 F.2d 606, 620, "... it cannot be presumed that juries will check their common sense at the courtroom door."
Allowing a waiver of immunity where there is liability insurance is a recognized policy in this state. In section 733.702, Florida Statutes (1979), the legislature has allowed for waiver of the three-month statute of limitations for filing claims on a decedent's estate in any proceeding to establish the liability of either the decedent or the personal representative for which there is casualty insurance protection. This extends to the limit of the casualty insurance protection. That section contains rigid deadlines as to the filing of claims and demands to close decedents' estates. In recognizing that an estate could be closed and claims against it still adjudicated, permitting late claims when covered by liability insurance allows for the swift administration of estates while still providing for equitable settlement of negligence actions.
Similarly, when the legislature waived the doctrine of sovereign immunity as to the torts of state and municipal employees and agencies, the original statute allowed for open-ended liability to the limits of any insurance policy the governmental body had at the time of suit. § 768.28(10), Fla. Stat. (Supp. 1974). That subsection read:
(10) If the state or its agency or subdivision is insured against liability for damages for any negligent or wrongful act, omission, or occurrence for which action may be brought pursuant to this section, then the limitations of this act shall not apply to actions brought to recover damages therefor to the extent such policy of insurance shall provide coverage. Agencies or political subdivisions presenting homogeneous risks may join together to purchase insurance protection or to provide other means of meeting obligations for damages as provided by this act.
In addition, it should be noted that liability coverage is optional as between the insured and the carrier. We recently held that it is not against public policy for automobile insurance coverage to contain an exclusion clause as to family members:
We reject the contention that these clauses are void as against public policy. In addition to the policy reasons for such clauses stated in Reid [v. State Farm Fire and Casualty Co., 352 So.2d 1172 (Fla. 1977)], we also note that insurance premiums may be established in part by reference to potential exposure to liability by insurance companies and may be lower where those most likely to be passengers in the automobile are expressly excluded from coverage.
*1070 Florida Farm Bureau Insurance Co. v. Government Employees Insurance Co., 387 So.2d 932, 934 (Fla. 1980).
In the present action, the complaint alleges that Sylvia Elaine Ard negligently unloaded her son, Benji Dwain Clary, from a motor vehicle, thus placing him in a dangerous and perilous position. In the absence of parental immunity Mrs. Ard, if negligent, would be liable for all injuries that she proximately caused. The effect of her immunity is to bar an otherwise valid action brought by her son against her. Because of the changes in the conditions which fostered its underlying policies, her immunity will be waived to the extent of her available insurance coverage, but not otherwise.
The decision of the district court reversing the summary judgment and allowing an action against Mrs. Ard is affirmed, but only to the extent of insurance coverage afforded to her.
It is so ordered.
SUNDBERG, C.J., and OVERTON, J., concur.
ADKINS, J., concurs specially with an opinion.
BOYD, J., dissents with an opinion in which ALDERMAN, J., concurs.
ADKINS, Justice, specially concurring.
I feel that parental immunity as well as spousal immunity should be abolished. A party injured by the fault of another should be able to obtain relief from that party and it should make no difference that the wrongdoer is a spouse or a parent. See dissent in Raisen v. Raisen, 379 So.2d 352 (Fla. 1979). Since I am unable to obtain a majority for this view, I concur in this opinion as the next best thing.
BOYD, Justice, dissenting.
I respectfully dissent from the Court's partial abrogation of the doctrine of parent-child immunity. In the first place, I disagree with the holding that liability shall exist only when and to the extent that there is a policy of insurance covering the liability in question, and that otherwise the liability will not be recognized by the law. Parental immunity is not a privilege that may be waived. Under the doctrine, as we have traditionally adhered to it, the law simply does not recognize parental negligence causing injury to the child as an actionable tort. Orefice v. Albert, 237 So.2d 142 (Fla. 1970); Horton v. Unigard Insurance Co., 355 So.2d 154 (Fla. 4th DCA 1978), cert. dismissed, 373 So.2d 459 (Fla. 1979); Webb v. Allstate Insurance Co., 258 So.2d 840 (Fla. 3d DCA 1972); Denault v. Denault, 220 So.2d 27 (Fla. 4th DCA 1969); Rickard v. Rickard, 203 So.2d 7 (Fla. 2d DCA 1967). Parental abuse or neglect may be a ground for state intervention in appropriate proceedings, but ordinary negligence can take so many forms that we should not allow a tort action against a parent on behalf of a child.
The principal reason for parental immunity is to prevent the disruption of family unity and harmony. Such disruption would inevitably follow if tort actions for ordinary negligence were allowed to be brought against a parent by his or her child. The Court majority reasons that that if the parent has insurance covering his liability to the child for negligence, then in a suit by the child against the parent their interests do not conflict but converge. I disagree. Being on opposite sides of a lawsuit puts people in an adversary position. For one thing, a liability insurer is entitled to expect its insured to behave in an adversary manner towards the injured plaintiff. Therefore, the interests of parent and child in such a situation conflict in a very real way.
Parents may insure against the possibility of injuries to their children. They may seek financial protection from the consequences of accidental injuries in the form of hospitalization, casualty, and disability insurance coverages. It is awkward and unnecessary for parents to seek such financial protection in the form of liability insurance covering the parents. The infinite range of possible accidents that will inevitably happen during a child's minority, and which are *1071 inextricably intertwined with parental conduct both reasonable and negligent, does not allow for a rational process of delineating rules and standards of parental care.
Section 895G of the American Law Institute's Restatement (Second) of Torts (1979) illustrates this serious problem that will be encountered with the abrogation of parental immunity. It provides:
§ 895G. Parent and Child.
(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.
(2) Repudiation of general tort liability does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious.
While rejecting the doctrine in paragraph (1), the subsection goes on in paragraph (2) to indicate that various instances of parental conduct, although negligent, may still be deemed privileged or simply not tortious depending on the circumstances. The comment to section 895G points out the serious problems that will be encountered in developing the standards to apply to the questions of the duties of care owed by parents to their children. It would be better simply to retain the doctrine.
Finally, the abrogation of the doctrine of immunity to the extent of a negligent parent's liability coverage will not contribute much to a family's opportunity to secure financial protection. Insurers may deal with the threat of collusive lawsuits by excluding coverage for liability to family members. See Florida Farm Bureau Insurance Co. v. Government Employees Insurance Co., 387 So.2d 932 (Fla. 1980). Without liability coverage, under the Court's theory, there will be no liability. Therefore families will have no greater opportunity for financial protection than they already have today.
The decision of the Court seems motivated by a desire to reach a fair and compassionate result in the present case. Unfortunately, in reaching such result the Court opens a Pandora's Box of problems for Florida families and the Florida court system.
ALDERMAN, J., concurs.
NOTES
[1] Ard v. Ard, 395 So.2d 586, 587, 590 (Fla. 1st DCA 1981). The district court cited Horton v. Unigard Ins. Co., 355 So.2d 154 (Fla. 4th DCA 1978), cert. dismissed, 373 So.2d 459 (Fla. 1979); Webb v. Allstate Ins. Co., 258 So.2d 840 (Fla. 3d DCA 1972); Rickard v. Rickard, 203 So.2d 7 (Fla. 2d DCA 1967).
[2] Art. V, § 3(b)(4), Fla. Const.
[3] Those states that have adopted and retained the immunity include: Owens v. Auto Mut. Indem. Co., 235 Ala. 9, 177 So. 133 (1937); Welter v. Curry, 260 Ark. 287, 539 S.W.2d 264 (1976); Rambo v. Rambo, 195 Ark. 832, 114 S.W.2d 468 (1938); Horton v. Reaves, 186 Colo. 149, 526 P.2d 304 (1974); Eschen v. Roney, 127 Ga. App. 719, 194 S.E.2d 589 (1972); Vaughan v. Vaughan, 161 Ind. App. 497, 316 N.E.2d 455 (1974); Barlow v. Iblings, 261 Iowa 713, 156 N.W.2d 105 (1968); Downs v. Poulin, 216 A.2d 29 (Me. 1966); Montz v. Mendaloff, 40 Md. App. 220, 388 A.2d 568 (1978); McNeal v. Administrator of Estate of McNeal, 254 So.2d 521 (Miss. 1971); Bahr v. Bahr, 478 S.W.2d 400 (Mo. 1972); State Farm Mutual v. Leary, 168 Mont. 482, 544 P.2d 444 (1975); Pullen v. Novak, 169 Neb. 211, 99 N.W.2d 16 (1959); Nahas v. Noble, 77 N.M. 139, 420 P.2d 127 (1966); Teramano v. Teramano, 6 Ohio St.2d 117, 216 N.E.2d 375 (1966); Chaffin v. Chaffin, 239 Or. 374, 397 P.2d 771 (1964); Castellucci v. Castellucci, 96 R.I. 34, 188 A.2d 467 (1963); Gunn v. Rollings, 250 S.C. 302, 157 S.E.2d 590 (1967); Campbell v. Gruttemeyer, 222 Tenn. 133, 432 S.W.2d 894 (1968); Felderhoff v. Felderhoff, 473 S.W.2d 928 (Tex. 1971); Oldman v. Bartshe, 480 P.2d 99 (Wyo. 1971).
[4] Those jurisdictions which have abolished or modified the immunity include: Hebel v. Hebel, 435 P.2d 8 (Alaska 1967); Streenz v. Streenz, 106 Ariz. 86, 471 P.2d 282 (1970); Gibson v. Gibson, 3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 (1971); Conn. Gen. Stat. § 52-572c (Supp. 1981); Williams v. Williams, 369 A.2d 669 (Del. 1976); Petersen v. City & County, 51 Haw. 484, 462 P.2d 1007 (1969); Schenk v. Schenk, 100 Ill. App.2d 199, 241 N.E.2d 12 (1968); Nocktonick v. Nocktonick, 227 Kan. 758, 611 P.2d 135 (1980); Rigdon v. Rigdon, 465 S.W.2d 921 (Ky. 1971); Sorensen v. Sorensen, 369 Mass. 350, 339 N.E.2d 907 (1975); Plumley v. Klein, 388 Mich. 1, 199 N.W.2d 169 (1972); Silesky v. Kelman, 281 Minn. 431, 161 N.W.2d 631 (1968); Briere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966); France v. A.P.A. Transport Corp., 56 N.J. 500, 267 A.2d 490 (1970); Gelbman v. Gelbman, 23 N.Y.2d 434, 245 N.E.2d 192, 297 N.Y.S.2d 529 (1969); Rupert v. Stienne, 90 Nev. 397, 528 P.2d 1013 (1974); N.C. Gen. Stat. § 1-539-21 (Supp. 1981); Nuelle v. Wells, 154 N.W.2d 364 (N.D. 1967); Falco v. Pados, 444 Pa. 372, 282 A.2d 351 (1971); Wood v. Wood, 135 Vt. 119, 370 A.2d 191 (1977); Smith v. Kauffman, 212 Va. 181, 183 S.E.2d 190 (1971); Merrick v. Sutterlin, 93 Wash.2d 411, 610 P.2d 891 (1980); Lee v. Comer, 224 S.E.2d 721 (W. Va. 1976); Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (1963).
[5] See Annot., 41 A.L.R.3d 904 (1972); Comment, Time to Abolish Parent-Child Tort Immunity: A Call to Repudiate Mississippi's Gift to the American Family, 4 Nova L.J. 25 (1980).